114 Cal.Rptr.2d 635 (2001)
94 Cal.App.4th 86
The PEOPLE, Plaintiff and Respondent,
v.
John Paul REYNOSO, Defendant and Appellant.
No. F034873.
Court of Appeal, Fifth District.
December 3, 2001.
As Modified December 11, 2001.
Review Granted February 20, 2002.
*636 A.M. Weisman, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Patrick J. Whalen and David A. Lowe, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
VARTABEDIAN, Acting P.J.
In the jury selection process, once a trial court determines a prima facie case of racial discrimination has been established by the opponent of a peremptory challenge, the court must genuinely evaluate the proponent's asserted race-neutral explanation. The simple acceptance of a vague explanation for which an appellate court can find no support in the record fails to satisfy this duty of the trial court.
Here, defendant John Paul Reynoso was convicted of first degree murder. In addition, it was found he used a firearm and inflicted great bodily injury during the commission of the murder within the meaning of Penal Code section 12022.53, subdivision (d). He appeals, raising numerous challenges, including the claim his Wheeler[1] motion was improperly denied. In the unpublished portion of this opinion, we reject his claim of insufficiency of evidence. We reverse for Wheeler error.

Facts[**]

DISCUSSION

I.

Wheeler Error
During jury selection, the People challenged four prospective jurors. The last two challenges were to Hispanic jurors. After the jury and alternates had been selected but had not yet been sworn, defendant *637 made a Wheeler motion, claiming the prosecutor had systematically excluded Hispanics from the jury. Counsel for defendant noted that "the jury as it's constituted now has twelve whites as the twelve jurors and three white alternates."
Initially the court stated it believed the motion was not timely,[3] but it proceeded with the motion. The court noted that the People had exercised three or four challenges and two of those were to Hispanics. The court asked the People to give their reasons why the two Hispanics were excused. The People questioned whether the court was finding a prima facie case. The court stated it was. The People then gave their reasons for excluding the two Hispanic prospective jurors.
As their first challenge of a prospective juror of Hispanic background (exercising their third peremptory challenge) the People excused a Mrs. Lopez. The court had asked each juror to state his or her name, general address, occupation, length of occupation, marital status, spouse's occupation, prior jury service, involvement in a criminal case, and legal or medical training. Lopez gave the following response to the court's inquiry: "My name's [Mrs.] Lopez. I live in Earlimart, California. I've lived there most of my life. I'm a case manager for at risk youth. My husband is a foreman for farm labor. I've never been selected for jury. I've never been involved in a criminal charge or victim. I have no legal or medical training. Never been involved in law enforcement. And I do have relatives that are in law enforcement."
The prosecutor's reasons for excluding Lopez were: "Your Honor, the People dismissed Miss Lopez based upon her being a counselor for at-risk youth. The People feel that Miss Lopez would have an undue sympathy for both defendants in this case because they are young and definitely if not at risk, past risk. [¶] The People feel that she would associate with the people she works with and she would probably would have pity on them."
A Mrs. Guerrero was the second Hispanic excused (the People's fourth and final peremptory challenge). During the standard questioning by the court, Guerrero gave the following response: "My name is. .... I just moved to Porterville for four months. My occupation I'm a customer service rep. I've been there for eight and a half years. My spouse, he's a construction supervisor. And he's been that for over 18 years. I've never served on a jury before. I've never been involved in any criminal [sic] or been a victim. I don't have any legal or medical training. Never been involved in any law enforcement. As far as a friend, I have a friend who's an officer in Porterville. As far as the relative, he's a brother who is a correctional officer."
The People gave the following reasons for their peremptory challenge of Guerrero: "In terms of Mrs. Guerrero, the People dismissed Mrs. Guerrero because she was [a] customer service representative. In terms of that, we felt that she did not have enough educational experience. It seemed like she was not paying attention to the proceedings and the People felt that she was not involved in the process. The People felt she would not be a good juror."
The court then stated: "And I accept those reasons as being not based upon race or ethnicity. And I don't find that there has been a violation of Wheeler and that thethere was not a systematic exclusion of a recognized ethnic group, i.e., *638 Hispanics in this case. So the motion is denied."
Defendant's counsel then asked to speak to the matter, the court gave him permission to do so. He stated: "And a couple points for the record is that counsel for the People passed on Mrs. Guerrero about seven or eight times. Then when I think he sensed that the defense was getting ready to pass, then it excused Mrs. Guerrero. There's nothing about what Miss Guerrero said in terms of her background that would make her be sympathetic to the defendants in this case. When she said she was a customer service rep. Her husband is a construction supervisor. [¶] She's got friends in the Porterville PD, her brother or brother-in-law works for the California Department of Corrections. There was nothing in her responses or her demeanor that would justify just excusing her other than it being a race-based exclusion is our position."
The court noted the defendants had excluded a Hispanic prospective juror.[4] Defense counsel replied that there was a legitimate reason for that. There was a discussion regarding the exclusion of that juror and connections to law enforcement.
Defense counsel reiterated that there was no legitimate reason to exclude Guerrero based on her responses; the fact she is Hispanic must have caused her exclusion. As to Lopez, defense counsel commented: "Counsel's argued that Miss.... Lopez would be sympathetic because she works with at risk youth. That's his reason for excusing her. But for the record also the reason Miss Guzman [a prospective juror excused by defendant's codefendant] was excused, as I understand it from Mr. Terrell [counsel for Julian], is because she was a victim of violent crime where guns were involved. That's what we have here."
The court made no further comments regarding the Wheeler motion.
Defendant argues that the trial court abdicated its duty to inquire into the prosecutor's explanations to test their genuineness, especially where there appears to be some question of disingenuousness. He claims that the peremptory challenges were based on group bias rather than specific bias and that the Wheeler motion was erroneously denied.
Respondent contends the trial court properly found no Wheeler violation. The People argue that the court's findings are supported by substantial evidence. Respondent acknowledges that the trial court's statement regarding the prosecutor's stated reasons was brief, but "it apparently independently assessed the prosecutor's reasons for peremptorily challenging the jurors." Respondent continues that there is no reason to conclude that the trial court did not make a sincere and reasoned effort to evaluate the credibility of the prosecutor's nondiscriminatory justifications.
When a party alleges that an opponent has improperly discriminated in the exercise of peremptory challenges, a three-step process to evaluate the claim is employed. "[O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination." (Purkett *639 v. Elem (1995) 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834.) "The exclusion by peremptory challenge of a single juror on the basis of race or ethnicity is an error of constitutional magnitude requiring reversal." (People v. Silva (2001) 25 Cal.4th 345, 386, 106 Cal.Rptr.2d 93, 21 P.3d 769.)
The trial court ruled in defendant's favor when it found a prima facie case of improper discrimination (step one). Respondent does not challenge this initial ruling and we assume that substantial evidence supports that determination. The prosecutor then defended his challenges with reasons that were facially neutral as to Hispanic ancestry or surname (step two).[5] "Our concern here is with step three: whether the record as a whole shows purposeful discrimination."[6] (People v. Silva, supra, 25 Cal.4th at p. 384, 106 Cal. Rptr.2d 93, 21 P.3d 769.)
We start by evaluating the prosecutor's reasons. The prosecutor first reasoned Guerrero was a customer service representative, thus lacking enough educational experience. While the record supports that Guerrero is a customer service representative, there is nothing in the record about her educational experience other than speculative inference. While some professions, for example doctors, lawyers, teachers, require a certain level of education, the same cannot be said for a customer service representative. Furthermore the prosecutor did not explain how Guerrero's occupation or education related to this case. In People v. Turner (1986) 42 Cal.3d 711, 230 Cal.Rptr. 656, 726 P.2d 102, a prospective juror stated that she was employed as a "`supervising hospital unit coordinator.'" (Id. at pp. 725-726, 230 Cal.Rptr. 656, 726 P.2d 102.) The prosecutor's reason for excluding her was, "`I think it was something in her work as to that she was doing that from our standpoint, that background was notwould not be good for the People's case. And I excused her, along with quite a few other people, too, for the same reason.'" (Id. at p. 725, 230 Cal.Rptr. 656, 726 P.2d 102.) The Supreme Court found this explanation to be unsatisfactory. "To begin with, the assertion that `something in her work' would `not be good for the People's case' is so lacking in content as to amount to virtually no explanation. If such vague remarks were held to satisfy the prosecution's burden of rebutting a prima facie case of group discrimination, the defendant's constitutional right to trial by a jury drawn from a representative cross-section of the community could be violated with impunity." (Ibid.)
In contrast, in People v. Barber (1988) 200 Cal.App.3d 378, 245 Cal.Rptr. 895 the prosecutor exercised a peremptory challenge against a kindergarten teacher. One of the reasons given for excluding this teacher was "`many teachers have somewhat of a liberal background and are less prosecution oriented.'" (Id. at p. 394, 245 Cal.Rptr. 895.) We found the explanation to be a valid reason. First we stated, "[peremptory challenges are often exercised against teachers by prosecutors on the belief they are deemed to be rather liberal." (Ibid.) We noted that the prosecutor relied on her past experience that teachers tend to be liberal and less prosecution oriented and thus we distinguished this employment-based reason from the *640 unsatisfactory vague explanation given by the prosecutor in Turner.
For the People to say they excluded Guerrero because she was a customer service representative and lacked educational experience bears similarity to the hollow reason given in Turner. The prosecutor offered no explanation why, on the facts of this case, Guerrero's occupation and presumed lack of educational experience would tend to make her an unfavorable juror for the prosecution. In contrast, the prosecutor's reasons for excluding Lopez [she was a counselor for at risk youth and would have an undue sympathy for both defendants because they are young and at risk] included "a neutral explanation related to the particular case to be tried." (Batson v. Kentucky (1986) 476 U.S. 79, 98, 106 S.Ct. 1712, 90 L.Ed.2d 69.) As to Guerrero, the prosecutor "did not articulate how these failings [being a customer service representative and lacking education] related to jury service in this case." (People v. Fuentes (1991) 54 Cal.3d 707, 720, 286 Cal.Rptr. 792, 818 P.2d 75.) While trivial reasons are not per se invalid and the validity of peremptory challenges should not be elevated to challenges for cause, "[w]hat is required are reasonably specific and neutral explanations that are related to the particular case being tried." (People v. Johnson (1989) 47 Cal.3d 1194, 1218, 255 Cal.Rptr. 569, 767 P.2d 1047.)[7]
The prosecutor also stated that "[i]t seemed like she [ Guerrero] was not paying attention to the proceedings and the People felt that she was not involved in the process. The People felt she would not be a good juror." A prospective juror's body language or manner of answering questions can be a proper basis for justifying a peremptory challenge and rebutting a prima facie case. (People v. Fuentes, supra, 54 Cal.3d at pp. 714-715, 286 Cal.Rptr. 792, 818 P.2d 75.) It is, of course, impossible from a cold record for us to definitively determine whether Guerrero was or was not paying attention or was or was not involved in the process. On the one hand, there is nothing in Guerrero's responses which indicated she was not paying attention. She competently answered the questions posed to all jurors, and did so in a manner not significantly different from other jurors'"cold" responses contained in the record. "[Credibility determinations require a personal presence that a cold transcript cannot convey." (Abbott v. Mandiola (1999) 70 Cal.App.4th 676, 683, 82 Cal. Rptr.2d 808.) "This is, of course, one reason why appellate courts in this area of law generally give great deference to the trial court, which saw and heard the entire voir dire proceedings." (People v. Perez (1994) 29 Cal.App.4th 1313, 1330, 35 Cal. Rptr.2d 103.)
Defendant claims that the prosecutor's proffered reasonsthat Guerrero was inattentive and not involved in the processare too vague and general to be valid here. On this, we disagree; a somewhat inattentive prospective juror would be an appropriate concern, especially in a case of this magnitude. These particular reasons, if supported by the record, would be valid. The critical question becomes *641 whether the record supports this reasoning.
Acknowledging that the trial court was present in the courtroom and in the best position to determine the credibility of the prosecutor's reasoning, we would, in the absence of other circumstances, reasonably assume that either the trial court observed the behavior itself and therefore found it to be true, or evaluated the overall circumstances and the credibility of the prosecutor and determined that his proffered reason was valid. The trial court was required to make "a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily....." (People v. Hall (1983) 35 Cal.3d 161, 167-168, 197 Cal.Rptr. 71, 672 P.2d 854.)
Because we are not afforded a record of one's body language or demeanor, we find it helpful to review any statements the trial court may have made reflective of its observations for the record regarding the prospective juror in question and any discussion that followed the trial court's ruling. The California Supreme Court has recognized that Wheeler hearings generally should be adversarial and defense counsel's contribution might make a difference in the ultimate ruling. (People v. Ayala (2000) 24 Cal.4th 243, 268, 99 Cal.Rptr.2d 532, 6 P.3d 193.)
After the prosecutor gave his reasons and the court accepted the reasons as not based on race or ethnicity, the court made no statements of its impressions of Guerrero's responses or demeanor. The defense then argued as to Guerrero that there was nothing in terms of her background that would make her sympathetic to the defense, she had friends and relatives in law enforcement, and "[t]here was nothing in her responses or her demeanor that would justify just excusing her other than it being a race-based exclusion." (Emphasis added.)
The following exchange took place:
"THE COURT: And I believe that there was another Hispanic that was excused not by the People, but by the defense and that was Mrs. Guzman.
"MR. RUMERY [Defense Counsel]: That was a legitimate reason. I didn't excuse her.
"THE COURT: I'm not saying it wasn't legitimate. You just brought up I'm not arguing with you, but I want the record to be clear, you argued that even a person who the People should want to have on, namely law enforcement background may still kick off because of being Hispanic. I'm just pointing out that Miss Guzman was another person that is Hispanic background but they did not kick off and I believe her background was that she had been the one who had been kidnapped.
"MR. RUMERY: Right. I would say she would want to be kept on by the People because she's been a victim of a violent crime at gunpoint.
"THE COURT: But your argument was that so should the other person because they had law enforcement background.
"MR. RUMERY: I didn't say she was law enforcement background.
"THE COURT: I thought you said
"MR. RUMERY: I was looking over my notes in terms of what she said in answer to the nine questions that are up on the little poster. She responded that she has friends in the Porterville PD.
"THE COURT: Right. Law enforcement people.
"MR. RUMERY: And a brother who works for California Department of Corrections. *642 So I'm just saying that based on those responses, there's no legitimate reason to exclude her based on those responses other than the fact that she has her she's Hispanic. I'm trying to make that for the record."
During general questioning of all jurors Guzman indicated that she had been kidnapped at gunpoint coupled with an attempt to rape her and cause bodily harm. She stated that she thought she could judge the case fairly.[8] During individual questioning she revealed that she had a brother-in-law who worked for the Merced Police Department. She was peremptorily challenged and excused by counsel for Julian.
We begin by noting that the trial court's discussion regarding prospective juror Guzman was erroneous for two reasons. First, the court erred when, for whatever reason, it commented on the fact that the defense had challenged a Hispanic prospective juror [Guzman].[9] "[T]he propriety of the prosecutor's peremptory challenges must be determined without regard to the validity of defendant's own challenges." (People v. Snow (1987) 44 Cal.3d 216, 225, 242 Cal.Rptr. 477, 746 P.2d 452.) Second, the court noted that Guzman was another Hispanic prospective juror that the People did not excuse. "Although the passing of certain jurors [within a cognizable group] may be an indication of the prosecutor's good faith in exercising his peremptories, and may be an appropriate factor for the trial judge to consider in ruling on [the prima facie portion of] a Wheeler objection" (ibid.) the court had already made its prima facie finding. Whether the People would have challenged Guzman cannot be known because she was eliminated from the jury pool by the defense and at the time the Wheeler motion was made here there were no Hispanic jurors remaining. Furthermore, the inclusion of one member of a cognizable group "`ignores the fact that other members of the group may have been excluded for improper, racially motivated reasons.'" (People v. Motton (1985) 39 Cal.3d 596, 607-608, 217 Cal.Rptr. 416, 704 P.2d 176.) Thus, the trial court should not have considered the circumstances regarding Guzman in assessing whether the reasons given for Guerrero were valid.
Next, we note that although the court felt compelled to comment on defendant's statement regarding Guerrero's ties to law enforcement, it did not respond to or even acknowledge defendant's comment that there was nothing in Guerrero's demeanor that would justify excusing her. Defendant's statement demonstrated his disagreement with the prosecutor's assessment that Guerrero was not paying attention and was not involved in the process. Neither the trial court's initial comments nor its subsequent comments contain any particularized assessment of the prosecution's justifications.
The California Supreme Court recently discussed the trial court's duty to make a sincere and reasoned attempt to evaluate the justifications of the prosecutor as applied to each juror in People v. Silva, supra, 25 Cal.4th 345, 106 Cal.Rptr.2d 93, 21 P.3d 769. In Silva, the defendant was being retried for the penalty phase of his capital murder case; the first penalty phase had resulted in a hung jury with *643 seven voting in favor of death and five voting for a sentence of life imprisonment without parole. Twice during jury selection for the retrial, the prosecutor commented that the first penalty trial had hung up on racial grounds. The defense made its first Wheeler motion to dismiss the panel after the prosecutor had exercised peremptory challenges against three prospective jurors with Hispanic ancestry or surnames. The court found a prima facie case and asked the prosecutor to explain the reasons for the challenges.[10]
The record in Silva reflected the following as to juror Jose M.
"During the ex parte hearing, the prosecutor said he challenged M. because, during the death qualification voir dire, M. said `he would look for other options' when the prosecutor `asked him could he exercise his discretion to impose the death penalty,' and M. `indicated that he thought it was the toughest penalty, and he would look for other options.' The prosecutor said he `also felt that [M.] was an extremely aggressive person and might hang the jury with his thoughts at that point....'
"Defendant alleges, and we agree, that the transcript of the death-qualification voir dire provides no support for either of these reasons. When defense counsel asked M. for his opinion on the death penalty, M. answered: `Well, I guess I have an opinion on it. I mean, it's the mostthe hardestoh, what's the word I'm looking forpunishment you can give.' When defense counsel asked M. to clarify whether he was for or against the death penalty, he replied: `I would say I'm mixed. I would, you know, consider it and I would consider opposition to it.' Defense counsel then explained how a jury is supposed to decide the penalty in a capital case, and M. said he could do that. Defense counsel asked: `So you're saying you don't think you would have a problem returning either verdict?' M. replied: `No.'
"In answer to further questioning by defense counsel, M. promised that he would engage in deliberations, that `after doing that process' he would `definitely' stand by his decision if he was convinced he was right and the others were wrong, but also that he would reanalyze his own decision if other jurors convinced him he was wrong.
"In reply to the prosecutor's questions, M. said he did not consider himself an `overly sympathetic person,' and he assured the prosecutor that he would `listen to all the evidence that's presented' from `both sides,' that he would attempt to arrive at a fair and impartial verdict `whatever it is,' that if the jury was `hung up one way or the other' he would `back off and `listen to the other jurors and ask [him]self "Was I right or was I wrong?"` In response to the prosecutor's question asking whether he was `a strong enough person' if he felt he was wrong `to admit this out loud and change [his] vote,' M. answered `Certainly.'
"The prosecutor then asked: `Do you lean one way or the other on the death penalty, do you think?'
"M. answered: `Possibly slightly for it.'
"Finally, the prosecutor asked M. whether he could return a death verdict against defendant `if he's earned the death penalty.' M. answered `Yes.'" (People v. *644 Silva, supra, 25 Cal.4th at pp. 376-377,106 Cal.Rptr.2d 93, 21 P.3d 769.)
"[T]he trial court did not ask the prosecutor any questions and did not remark on any discrepancies between the prosecutor's stated reasons and the prospective jurors' responses on voir dire or on their questionnaires. When proceedings resumed in the presence of defendant and defense counsel, the trial court denied the first Batson/Wheeler motion. The court said only that the prosecutor `did provide an explanation with regard to' the three peremptory challenges and that `I think that there was a good excuse with regard to all of these people.'" (People v. Silva, supra, 25 Cal.4th at p. 382, 106 Cal.Rptr.2d 93, 21 P.3d 769.)
A second Batson/Wheeler motion was made after the prosecutor challenged two more Hispanic prospective jurors. Again "the trial court did not question the prosecutor or remark on the apparent disparity between the prosecutor's stated reasons and what the record shows to have occurred during voir dire." The court informed defense counsel that the reasons given by the prosecutor "`appear to be very valid reasons for those excuses.'" (People v. Silva, supra, 25 Cal.4th at p. 383,106 Cal.Rptr.2d 93, 21 P.3d 769.)
At the motion for new trial defendant claimed that almost all of the prosecutor's reasons for excluding the challenged Hispanic prospective jurors were either unsupported by the record or inherently implausible. Without commenting on the reasons the trial court reiterated that it found the reasons sufficient. (People v. Silva, supra, 25 Cal.4th at p. 384, 106 Cal.Rptr.2d 93, 21 P.3d 769.)
Defendant Silva appealed, challenging the validity of the denial of his Batson/Wheeler motion at the penalty phase of his trial. The Supreme Court reviewed all of the challenges and found numerous discrepancies between the prosecutor's reasons and the responses of the challenged jurors in the record. The Supreme Court then focused on prospective juror Jose M. The court found that the trial court erred in its review of the reasons given to support the prosecutor's challenge to Jose M: "[W]e agree with defendant that the court erred in denying the motion as to Prospective Juror Jose M. Nothing in the transcript of voir dire supports the prosecutor's assertions that M. would be reluctant to return a death verdict or that he was `an extremely aggressive person.' Although an isolated mistake or misstatement that the trial court recognizes as such is generally insufficient to demonstrate discriminatory intent [citation], it is another matter altogether when, as here, the record of voir dire provides no support for the prosecutor's stated reasons for exercising a peremptory challenge and the trial court has failed to probe the issue [citations]. We find nothing in the trial court's remarks indicating it was aware of, or attached any significance to, the obvious gap between the prosecutor's claimed reasons for exercising a peremptory challenge against M. and the facts as disclosed by the transcripts of M.'s voir dire responses. On this record, we are unable to conclude that the trial court met its obligations to make `a sincere and reasoned attempt to evaluate the prosecutor's explanation' [citation] and to clearly express its findings [citation]." (People v. Silva, supra, 25 Cal.4th at p. 385, 106 Cal.Rptr.2d 93, 21 P.3d 769.)
The Supreme Court concluded: "We conclude that the trial court's ultimate determinationthat defendant failed to meet his burden of proving intentional discrimination with respect to the prosecutor's peremptory challenge of Prospective Juror M.is unreasonable in light of the evidence of the voir dire proceedings. Although we generally `accord great deference to the trial court's ruling that a particular *645 reason is genuine,' we do so only when the trial court has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror. [Citations.] When the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings. But when the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient. As to Prospective Juror M., both of the prosecutor's stated reasons were factually unsupported by the record. Because the trial court's ultimate finding is unsupportedat least as to Prospective Juror M. we conclude that defendant was denied the right to a fair penalty trial in violation of the equal protection clause of the federal Constitution [citation] and was denied his right under the state Constitution to a trial by a jury drawn from a representative cross-section of the community [citation]." (People v. Silva, supra, 25 Cal.4th at pp. 385-386, 106 Cal.Rptr.2d 93, 21 P.3d 769.)
The reasons given by the prosecutor in Silva, supra, 25 Cal.4th 345, 106 Cal. Rptr.2d 93, 21 P.3d 769 were contradicted by the record and were thus implausible and unsupported by the record. While the record does not contradict the reasons given here, neither does the record on appeal support them. The record does not engender confidence in a finding that the trial court engaged in a sincere and reasoned attempt to evaluate the prosecutor's justification for challenging Guerrero. First, as previously discussed, the initial reason given by the prosecutor [Guerrero was a customer service representative with a lack of educational experience] was not supported by the record and lacked any content related to the case being tried. Second, the demeanor reason given by the prosecutor, which is not reflected within the cold record on appeal, was disputed by the defense yet not clarified in any way by the court. Finally, in rejecting defendant's argument, rather than focusing on the question of validity of the People's justifications, the trial court attempted to buttress its finding by analyzing a Hispanic juror not challenged by the People, but excused by the defense. The court's comments regarding Guzman could appropriately have come into play during the courts initial screening of whether a prima facie case had been shown, but not during its analysis of whether the prosecutor's justifications were valid. (See People v. Granillo (1987) 197 Cal.App.3d 110, 121, 242 Cal.Rptr. 639.)
Trial courts should not relieve prosecutors of their burden during a Wheeler motion by readily accepting vague explanations. On this record, we are unable to conclude that the trial court satisfied its obligations to evaluate the prosecutor's explanation. (People v. Silva, supra, 25 Cal.4th at p. 385, 106 Cal.Rptr.2d 93, 21 P.3d 769.) "The exclusion by peremptory challenge of a single juror on the basis of race or ethnicity is an error of constitutional magnitude requiring reversal." (Id. at p. 386, 106 Cal.Rptr.2d 93, 21 P.3d 769.) In light of the reversal, we will not discuss the remaining issues, other than the matter of sufficiency of evidence.

II.

Sufficiency of the Evidence[***]

DISPOSITION
The judgment is reversed. Defendant's request for this court to take judicial notice *646 of legislative history for Penal Code section 12022.53 is denied.
WE CONCUR: HARRIS, J. and WISEMAN, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Facts and part II of the Discussion.
[1] People v. Wheeler (1978) 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748.
[**] See footnote *, ante.
[3] Jury selection is not complete until the panel is selected and sworn. A Wheeler motion must be made, at the latest, before jury selection is completed. (People v. Gore (1993) 18 Cal.App.4th 692, 703, 22 Cal.Rptr.2d 435.) Respondent does not contend that the motion was untimely.
[4] As discussed infra, the trial court should not consider the defendant's challenges when ruling on a Wheeler motion.
[5] "`Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" (Purkett v. Elem, supra, 514 U.S. at p. 768, 115 S.Ct. 1769.)
[6] While our analysis here primarily focuses on step three, our discussion necessarily includes aspects of step two insofar as the explanations given in that step need some support in the record before us.
[7] Defendant points out that other jurors who appeared to have little educational background were not excluded from the jury. The California Supreme Court has repeatedly stated that a reviewing court should not engage in a comparative analysis of prospective jurors' responses. Comparative analysis of jurors' responses "to evaluate the bona fides of the prosecutor's stated reasons for peremptory challenges does not properly take into account the variety of factors and considerations that go into a lawyer's decision to select certain jurors while challenging others that appear to be similar." (People v. Johnson, supra, 47 Cal.3d at p. 1220, 255 Cal.Rptr. 569, 767 P.2d 1047.)
[8] Although during this questioning the record does not identify Guzman by name and refers to her only as "a juror," later discussions on the record leave no question that Guzman was the prospective juror previously not identified by name.
[9] We note that the prosecutor also commented to the court that the defense had challenged an additional Hispanic prospective juror.
[10] The court allowed the prosecutor to explain his reasons in an ex parte hearing out of the presence of defendant and defense counsel. The Supreme Court found this was error but the effect of the error was partially alleviated when the transcripts were unsealed and the defense was allowed to bring a new trial motion based on the contents of the transcripts. (People v. Silva, supra, 25 Cal.4th at pp. 384-385, 106 Cal.Rptr.2d 93, 21 P.3d 769.)
[***] See footnote *, ante.