CORRECTED November 2, 2010 +

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEAL

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JULIAN JESUS REYNOSO; JOHN PAUL REYNOSO, | No. 08-15800 |
| Petitioners–Appellants, | D.C. No. 1:04-CV-05025-LJO-DLB |
| v. | MEMORANDUM* |
| JAMES E. HALL; G.J. GIURBINO, | |
| Respondents–Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted December 7, 2009
San Francisco, California

Before: SCHROEDER and LUCERO,**  and CALLAHAN, Circuit Judges,. +

---

* This disposition is not appropriate for publication and is not precedent except as provided
by 9th Cir. R. 36-3.
 ** The Honorable Carlos F. Lucero, Circuit Judge for the Tenth Circuit, sitting by
designation.

Julian and John Reynoso appeal from the district court's order denying their petition

for a writ of habeas corpus. This court certified for appeal the issue of "whether the

prosecutor violated [the Reynosos'] rights under Batson v. Kentucky, 476 U.S. 79 (1986),

during jury selection." Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we

reverse the judgment of the district court.

**I**

John and Julian Reynoso were tried jointly for the murder of Mario Martinez. After

jury selection was completed, but before the jury was sworn, Julian filed a

Batson/Wheeler[1] motion objecting to the prosecutor's peremptory challenges to two

Hispanic jurors. Noting that "the People did only exercise . . . four [peremptory]

challenges and two of those were Hispanic," the trial court requested "that the People give

their reasons why they excused those two." With respect to one of the two Hispanic jurors,

the prosecutor responded:

> In terms of [Elizabeth G.], the People dismissed [Elizabeth G.] because she was [a]
> customer service representative. In terms of that, we felt that she did not have
> enough educational experience. It seemed like she was not paying attention to the
> proceedings and the People felt that she was not involved in the process. The People
> felt she would not be a good juror.

> Without conducting a comparative juror analysis or making any factual findings, the

---

[1] People v. Wheeler, 583 P.2d 748 (Cal. 1978), is the California analogue of
Batson, although it articulates somewhat different standards. In this case, we
review for federal constitutional error under Batson.

trial court held: "I accept those reasons as being not based upon race or ethnicity. And I don't find that there has been a violation of Wheeler and that the—there was not a systematic exclusion of a recognized ethnic group, i.e., Hispanics in this case. So the motion is denied." Other than noting that defense counsel had also excused one Hispanic prospective juror earlier in the proceeding, the trial court made no further comments regarding the Reynosos' Batson/Wheeler motion. A jury consisting entirely of white jurors convicted the two brothers of first degree murder and related offenses.

On direct appeal, the California Court of Appeal reversed the Reynosos' convictions, holding that the prosecution had unconstitutionally exercised a peremptory challenge on the basis of race. People v. Reynoso, 114 Cal. Rptr. 2d 635, 645 (Cal. Ct. App. 2001). In a four to three decision, the California Supreme Court reversed. People v. Reynoso, 74 P.3d 852, 870 (Cal. 2003). The majority held that there was nothing in the record to contradict the trial court's ruling or any reason "to deviate from the customary great deference normally afforded such rulings." Id. at 869-70 (internal quotations omitted).

John and Julian subsequently filed petitions for writs of habeas corpus in federal court. Their petitions were consolidated, and the District Court for the Eastern District of California denied the consolidated petition in January 2008. The district court determined that the trial court had found the reasons stated by the prosecution for striking the Hispanic jurors were not based on race or ethnicity. Although the district court recognized that a

comparative juror analysis might have revealed "a slight weakness" in the prosecution's rationale, it concluded that the Reynosos had failed to demonstrate that the prosecution's strike of Elizabeth G. was based on racial bias or pretext. The Reynoso brothers sought and were granted a certificate of appealability in November 2008.

## II

We review a district court's denial of a petition for a writ of habeas corpus de novo. Boyd v. Newland, 467 F.3d 1139, 1143 (9th Cir. 2006). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant habeas relief only if: (1) a state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). Because the California Supreme Court's decision violated both standards, we reverse the district court's judgment.

### A

Batson established a three-step process for evaluating a defendant's objection to a peremptory challenge: "First, the defendant must make a prima facie showing that a challenge was based on race. Second, the prosecution must offer a race-neutral basis for the challenge. Third, the court must determine whether the defendant has shown 'purposeful discrimination.'" Kesser v. Cambra, 465 F.3d 351, 359 (9th Cir. 2006) (en banc) (quoting Batson, 476 U.S. at 98).

4

This case turns on the third step of the Batson inquiry. In rejecting the Reynosos' Batson/Wheeler motion, the trial court held that there was no constitutional violation because there was no "systematic exclusion" of Hispanic jurors. Under Batson, however, purposeful discrimination in the exercise of a single peremptory challenge violates the Constitution. See 476 U.S. at 95 ("A single invidiously discriminatory governmental act is not immunized by the absence of such discrimination in the making of other comparable decisions." (quotations omitted)); see also United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir. 1994) ("[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose.").

On appeal, the California Supreme Court majority accepted the term "systematic exclusion" as "an acceptable shorthand phrase for denoting [Batson/]Wheeler error." Reynoso, 74 P.3d at 868 n.8. This conclusion, however, runs counter to clearly established federal law. See Batson, 476 U.S. at 95-96 ("For evidentiary requirements to dictate that several must suffer discrimination before one could object, would be inconsistent with the promise of equal protection to all." (internal quotation and citation omitted)); Sims v. Brown, 425 F.3d 560, 574 (9th Cir. 2005), amended 430 F.3d 1220 ("[T]he trial court's ruling that it was necessary to show a 'systematic exclusion' of prospective jurors was incorrect, as the Constitution forbids striking a single juror for a discriminatory purpose[.]"); United States v. De Gross, 913 F.2d 1417, 1425 (9th Cir. 1990) ("Although

5

showing a pattern of systematic exclusion is one way of giving rise to an inference of discrimination, it is not the only way."); see also People v. Fuentes, 818 P.2d 75, 80 n.4 (Cal. 1991) ("The term [systematic exclusion] is not apposite in the Wheeler context, for a single discriminatory exclusion may violate a defendant's right to a representative jury." (emphasis added)).

Pointing to the trial court's use of the conjunctive, the dissent argues that the trial court did not use "systematic exclusion" as shorthand and, in fact, made two separate findings: that there was no Wheeler error, and that there was no systematic exclusion of Hispanic jurors. (Dissenting Op. 2.) This is a peculiar reading. The court said: "I accept those reasons as being not based upon race or ethnicity. And I don't find that there has been a violation of Wheeler and that the—there was not a systematic exclusion of a recognized ethnic group, i.e., Hispanics in this case. So the motion is denied." The phrase, "and that the—there," is read more naturally as a linguistic stumble than a purposeful division between two independent conclusions. Neither the California Supreme Court nor the California Court of Appeal interpreted the trial court's statement as containing two separate findings. Moreover, the dissent's construction is strongly undermined by the trial court's next comment—that defense counsel had also excused a Hispanic prospective juror earlier in the proceeding—which underscores the trial court's misapprehension of what constitutes Wheeler error. See Wheeler, 583 P.2d at 766 n.30 ("A [prosecutor] does not sustain his

6

burden of justification by attempting to cast a different burden on his opponent." (overruled on other grounds)). Further, because the trial court failed to conduct any particularized assessment of the prosecution's proffered justifications, we cannot assume the court simply set forth the proper standard for individualized discrimination under <u>Batson</u> in an inartful manner. "To conclude so would be as novel a proposition as the idea that 'clear and convincing evidence' has always meant a 'preponderance of the evidence.'" <u>Johnson v. California</u>, 545 U.S. 162, 166 n.2 (2005) (quotation omitted). We therefore hold that by excusing the trial court's error, the California Supreme Court acted contrary to clearly established federal law.[2]

**B**

The California Supreme Court decision was also "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

---

[2] The dissent misunderstands our decision when it suggests we wrongfully accuse the California Supreme Court majority of failing to recognize that a single racially motivated peremptory challenge violates <u>Batson</u>. (See Dissenting Op. 3-4.) Although the California Supreme Court majority may have used the correct wording of the legal standard for evaluating a <u>Batson</u> claim in the footnote cited by the dissent (see Dissenting Op. 2-3), its actual decision was contrary to clearly established federal law because it condoned the trial court's use of the erroneous "systematic exclusion" standard and then deferred to the trial court's conclusion that used the tainted erroneous standard in order to hold that a <u>Batson</u> error had not occurred. See <u>Lewis v. Lewis</u>, 321 F.3d 824, 829 (9th Cir. 2003) ("Because [the state appellate court's] decision affirmed the trial court and adopted one of the reasons cited by the trial court, . . . our analysis will necessarily include discussion of the trial court's decision as well.").

7

When evaluating a Batson challenge, a court must consider each of the prosecutor's justifications "within the context of the trial as a whole." Kesser, 465 F.3d at 359. "If a prosecutor's proffered reason for striking a [minority] panelist applies just as well to an otherwise-similar [nonminority panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination" under Batson's third step. Miller-El v. Dretke (Miller-El II), 545 U.S. 231, 241 (2005). As a result, courts must conduct comparative juror analyses when considering Batson objections. See Green v. LaMarque, 532 F.3d 1028, 1030 (9th Cir. 2008) ("[A] court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. . . . [which] may include a comparative analysis of the jury voir dire and the jury questionnaires of all venire members, not just those venire members stricken." (quotations omitted)); Turner v. Marshall, 121 F.3d 1248, 1251-52 (9th Cir. 1997) ("A comparative analysis of jurors struck and those remaining is a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for discrimination."); see also People v. Lenix, 187 P.3d 946, 961 (Cal. 2008) ("[Under Miller-El II,] evidence of comparative juror analysis must be considered in the trial court and even for the first time on appeal if relied upon by defendant and the record is adequate to permit the urged comparisons"); cf. Snyder v. Louisiana, 552 U.S. 472, 478 (2008) ("In [Miller-El II], the Court made it clear that in considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the

8

issue of racial animosity <u>must</u> be consulted." (emphasis added)).[3]

An evaluation of the state court record in this case shows that the California Supreme Court unreasonably determined that the prosecutor's stated reasons were not pretextual. The prosecutor's first reason for excusing Elizabeth G.—her lack of education—is belied by a comparative juror analysis. If we are to assume jurors have attained only the minimum education level required by their occupations, then we would conclude that five white jurors had similar education levels as Elizabeth G. These jurors included a shift supervisor for a canning plant, a housewife, a worker for a dairy products processing plant, a field man for a

---

[3] This court recently held that a trial court's failure to conduct a comparative juror analysis does not mandate de novo review of a <u>Batson</u> claim. <u>Cook v. LaMarque</u>, 593 F.3d 810, 816 n.2 (9th Cir. 2010). We therefore apply AEDPA deference. Contrary to the dissent's suggestion, we do not hold that the California Supreme Court's failure to undertake a comparative juror analysis in and of itself mandates habeas relief. (<u>See</u> Dissenting Op. 4-8.) Instead, in applying comparative juror analysis to a state court's factual determination in a <u>Batson</u> context, we follow a long line of Ninth Circuit cases, including <u>Cook</u>. <u>See</u> <u>Cook</u>, 593 F.3d at 815-18; <u>Ali v. Hickman</u>, 584 F.3d 1174, 1180-95 (9th Cir. 2009); <u>Green</u>, 532 F.3d at 1030-33; <u>Kesser</u>, 465 F.3d at 358-71. The dissent's reference to <u>Thaler v. Haynes</u>, 130 S. Ct. 1171 (2010) (per curiam), is not relevant. (<u>See</u> Dissenting Op. 6.) That case rejects a "categorical rule" that a trial judge who did not witness a juror's demeanor during voir dire cannot fairly evaluate a <u>Batson</u> challenge. <u>Thaler</u>, 130 S. Ct. at 1175. Thus, it does not disturb our analysis.

9

packing house, and a farmer.[4]  Failure to question any of these jurors about their education level or to exclude them on this basis undermines the prosecutor's justification for striking Elizabeth G.  See Miller-El II, 545 U.S. at 246 ("[T]he state's failure to engage in any meaningful voir dire examination on a subject the State alleges [causes it concern] is evidence suggesting that the explanation is a sham and a pretext for discrimination." (quotations omitted)).

In addition, the prosecutor failed to explain how Elizabeth G.'s education level was "related to the particular case to be tried," as required by Batson.  476 U.S. at 98.  There is little indication that a lack of educational experience would tend to make Elizabeth G. an unfavorable juror for the prosecution.  The Reynosos' case did not involve complicated issues of law that would arguably require a higher level of education; rather, it raised a straightforward issue of self-defense.  Cf. United States v. Hinojosa, 958 F.2d 624, 631-32 (5th Cir. 1992) (holding that the government's concern over lack of education was legitimately based on the complex legal issues raised by a fifty-eight count indictment); United States v. Tucker, 773 F.2d 136, 142 (7th Cir. 1985) (reasoning that "[t]he prosecutor

---

[4] Warden James Hall attempts to distinguish these jurors on the basis of their professions and past jury experience.  However, the prosecutor in this case did not dismiss Elizabeth G. based on her profession or lack of past jury experience.  The prosecutor's proffered reasons for dismissing Elizabeth G. were her presumed lack of education and her demeanor.  Accordingly, we examine only those justifications.  See Miller-El II, 545 U.S. at 252 ("[A] prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.").

wanted an educated jury that could understand letters of credit and the other aspects of this complicated commercial transaction, and the four blacks happened to have very little education or commercial experience").

Our review of the demeanor-based reason for Elizabeth G.'s dismissal is equally unavailing. First, defense counsel disputed that there was anything about Elizabeth G.'s demeanor that indicated she was not paying attention. Second, there was affirmative evidence in the record that Elizabeth G. responded to the trial court's questions. Third, the prosecution offered nothing to rebut defense counsel's contention that Elizabeth G. was attentive; instead, the prosecutor retorted that defense counsel had struck a prospective juror who "seemed and looked Hispanic" to the prosecutor.

Because we are not in a position to have observed Elizabeth G.'s demeanor, the "trial court's first-hand observations [are] of even greater importance" in this situation. Snyder, 552 U.S. at 477. "[T]he trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." Id. When "the record does not show that the trial judge actually made a determination concerning [the prospective juror's] demeanor," we cannot presume the court credited the prosecution's assertions. Id. at 479.

As in Snyder, the trial court here failed to make a factual finding regarding Elizabeth

11

G.'s demeanor. We reject Hall's contention that the court did so when it stated, "I accept those reasons as being not based upon race or ethnicity." Mere acknowledgment that the prosecutor's proposed justifications were race-neutral does not amount to a factual finding that Elizabeth G. was inattentive during the proceeding. The dissent's contrary approach, which would equate acceptance of a peremptory challenge with a finding that any and all of a prosecutor's assertions were factually correct, (Dissenting Op. 10-11), was squarely rejected by the Supreme Court in Snyder. In that case, the Court held "we cannot presume that the trial judge credited the prosecutor's assertion that [a prospective juror] was nervous" in reference to the trial court's statement, "I'm going to allow the challenge." Snyder, 552 U.S. at 479. The dissent provides no basis for reaching a contrary result in this entirely analogous situation.

Rather than making a factual finding, the trial court responded to defense counsel with a non-sequitur: It noted that defense counsel had excused a Hispanic prospective juror earlier in jury selection. This excusal was irrelevant, however, because under both California and federal law, the propriety of the prosecution's peremptory challenges must be determined without regard to the validity of the defendant's own challenges. See Brinson v. Vaughn, 398 F.3d 225, 234 (3d Cir. 2005); People v. Snow, 746 P.2d 452, 456 (Cal. 1987); Wheeler, 583 P.2d at 766 n.30 (overruled on other grounds).

Similarly, the fact that the prosecutor accepted the jury fourteen times with Elizabeth

12

G. seated in the jury box does not end our inquiry. To hold so would "provide an easy means of justifying a pattern of unlawful discrimination which stops only slightly short of total exclusion." Snow, 746 P.2d at 456-57. As noted by the Reynosos, it is "easy for a prosecutor to pass on a minority juror many times in a codefendant trial, and then try to insulate his later challenge against the minority juror by arguing that he passed on the juror several times." Because "[v]ery few defense attorneys will take the chance of accepting a jury in a murder trial without exercising a large number of challenges," a prosecutor can "safely wait to exercise his challenges against minority jurors until later in the jury selection process."[5]

Moreover, this court has previously held that passing or accepting a jury containing minority jurors only to peremptorily challenge those jurors later in the selection process does not refute the inference that the challenges were racially motivated. Williams v. Runnels, 432 F.3d 1102, 1109 (9th Cir. 2006). Because our review of the record shows that the prosecutor's proffered reasons were pretextual, there is no basis in the record for excluding Elizabeth G. other than her race. See Kesser, 465 F.3d at 360 ("If a review of the record undermines the prosecutor's stated reasons, . . . the reasons may be deemed a pretext

_____

[5] For a more detailed description of the ease with which prosecutors in this case could wait before peremptorily challenging Elizabeth G., see Justice Moreno's dissent in Reynoso, 74 P.3d at 879 n.6.

for racial discrimination." (quotations omitted)).[6] Accordingly, we hold that by denying the Reynosos' <u>Batson/Wheeler</u> claim, the California Supreme Court committed constitutional error under <u>Batson</u>. We conclude that the state supreme court decision was both an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence presented. <u>See</u> 28 U.S.C. § 2254(d)(1)-(2).

### III

For the foregoing reasons, the judgment of the district court is **REVERSED** and the case is **REMANDED** with instructions to grant the writs.

---

[6] The dissent's assertion that the record contains no "demonstrable evidence of racial bias by the prosecutor," (Dissenting Op. 12), simply ignores the probative failure of the prosecutor to strike similarly situated white jurors. <u>See</u> <u>Miller-El II</u>, 545 U.S. at 241 (describing such behavior as "powerful" evidence of purposeful discrimination). As noted, affirmative evidence also exists in the record showing that the prosecutor's demeanor-based reason for striking Elizabeth G. was pretextual. <u>See</u> <u>McClain v. Prunty</u>, 217 F.3d 1209, 1221 (9th Cir. 2000) ("Where the facts in the record are objectively contrary to the prosecutor's statements, serious questions about the legitimacy of a prosecutor's reasons for exercising peremptory challenges are raised.").

*Reynoso v. Hall*, No. 08-15800

CALLAHAN, CIRCUIT JUDGE, dissenting:

I dissent from the majority's decision to reverse the district court and remand for the purpose of granting the writs of habeas corpus to Julian and John Reynoso ("the Reynosos") who were each convicted of first degree murder in the murder of Mario Martinez. I agree with the majority that this case turns on the third step of the *Batson*[1] inquiry, but find that the majority's analysis of the law and facts flawed. The majority misapprehends both the requirements of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and controlling Supreme Court opinions in concluding that the California Supreme Court's opinion in this case was "was contrary to, or involved an unreasonable application of, clearly established federal law" and also "was based on an unreasonable determination of the facts in light of the evidence presented." Maj. Op. 4 (quoting 28 U.S.C. § 2254(d)(1)-(2)).

**I**

First, the majority finds that the California Supreme Court's decision was contrary to established federal law under 28 U.S.C. § 2254(d)(1) because the

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 98 (1986). *People v. Wheeler*, 593 P.2d 748 (Cal. 1978), is California's analogue to *Batson*.

California Supreme Court failed to appreciate that purposeful discrimination in the exercise of a single peremptory challenge violates the Constitution. Maj. Op. 5-7. Although I agree that the majority's abstract statement of the law is correct, it misreads the record and the court's opinion.

As an initial matter, it should be noted that the trial court's statement was in the conjunctive. After accepting the prosecutor's reasons for excluding potential juror Elizabeth G. – that she didn't have enough education and was inattentive – the trial court stated "[a]nd I don't find that there has been a violation of *Wheeler* **and** that the – there was not systematic exclusion of a recognized ethnic group, i.e., Hispanics in this case" (emphasis added). The trial court made two separate findings connected by "and." The majority errs by suggesting that the trial court made a single limited finding – that there was no systematic exclusion of Hispanics – when the trial court in fact separately found no *Wheeler* violation based on the prosecution's proffered reasons.

Further, contrary to the majority's suggestion, the California Supreme Court did recognize that a single peremptory challenge could violate the Constitution. In response to the dissent, the California Supreme Court commented:

> Justice Kennard also assails the trial court for using the term "systematic exclusion" in denying the *Batson*/*Wheeler* motion, suggesting the court thereby applied a wrong or outdated standard.

-2-

(Dis. opn. of Kennard, J., post, 3 Cal. Rptr.3d at pp. 793-794, 74 P.3d at pp. 872-873.)  Not so.  Since the day the seminal decisions in *Wheeler* and *Batson* were each decided, it has been clearly understood that the unconstitutional exclusion of even a single juror on improper grounds of racial or group bias requires the commencement of jury selection anew, or reversal of the judgment where such error is established on appeal.  (*Batson*, supra, 476 U.S. at p. 95, 106 S.Ct. 1712 [equal protection clause]; *Wheeler*, supra, 22 Cal.3d at p. 282, 148 Cal. Rptr. 890, 583 P.2d 748 [Cal. Const. right to trial by representative jury].)  We long ago observed that although the well-worn phrase "systematic exclusion" is somewhat of a misnomer when used to describe a discriminatory use of peremptory challenges (since a single discriminatory and therefore unconstitutional exclusion will constitute *Wheeler* error), this and other courts have used and understood that term as an acceptable shorthand phrase for denoting Wheeler error.  (*People v. Fuentes*, *supra*, 54 Cal.3d at p. 716, fn. 4, 286 Cal. Rptr. 792, 818 P.2d 75.)  That observation having been made by this court nearly 13 years ago in *Fuentes*, it hardly seems fair or appropriate to fault this trial judge for using the term once in passing when denying the *Batson*/*Wheeler* motion, much less to conclude that a wrong standard was applied in ruling on the motion.

*People v. Reynoso*, 74 P.3d 852, 868 n.8 (Cal. 2003).

Thus, the California Supreme Court recognized that a single peremptory challenge could violate the Constitution.  The court's holding was that in light of the use by California courts of "systematic exclusion" as a "shorthand phrase," the trial court's reference to "systematic exclusion," coupled with its other finding that there had been no *Wheeler* violation, was not a failure to recognize that purposeful discrimination in the exercise of a single peremptory could violate the Constitution.  Since the Supreme Court did not make the legal ruling suggested by

-3-

the majority, the California Supreme Court's opinion is not contrary to clearly established Supreme Court precedent.

## II

The majority's evaluation of the facts of this case is similarly problematic. It holds that the California Supreme Court's decision violated AEDPA because it was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

## A

The majority correctly recognizes that the prosecutor's justifications for excusing a potential juror must be considered "within the context of the trial as a whole." Maj. Op. 6, citing *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006) (en banc). However, the majority then asserts that the state courts violated the Constitution by failing to undertake a comparative juror analysis.[2] I disagree with the majority's reading of the relevant case law.

The Reynosos' trial concluded in 1999 and the California Supreme Court's decision affirming the Reynosos' conviction was issued in 2003. The cases cited

---

[2]     Although the majority presents this issue under the "unreasonable determination" prong of AEDPA, 28 U.S.C. § 2254(d)(2), its comparative juror analysis argument more accurately fits under 28 U.S.C. § 2254(d)(1) as an argument that clearly established federal law mandated the use of a comparative juror analysis by the California Supreme Court.

-4-

by the majority do not stand for the proposition that there was "clearly established Supreme Court law" in 1999 or in 2003 that retroactively require the trial court to have conducted a comparative juror analysis. *See Snyder v. Louisiana*, 552 U.S. 472 (2008)*, Miller-El v. Dretke*, 545 U.S. 231, 241 (2005); *Green v. LaMarque*, 532 F.3d 1028, 1030 (9th Cir. 2008); *Kesser*, 465 F.3d at 358-61.

Although the Supreme Court utilized a comparative juror analysis to retroactively review state court decisions in both *Miller-El* and *Snyder*, in neither case did it hold that there was a retroactive Constitutional requirement to use a comparative juror analysis in *Batson* cases and that the failure to have done so was error on the part of the state courts. Rather, both of these decisions stand for the proposition that a comparative juror analysis is a tool that **may** be used by courts as a tool in reviewing *Batson* cases.[3]

---

[3]    Notably, in 2003 when the California Supreme Court was considering the Reynosos' case, California courts were not required to conduct a comparative juror analysis under *Batson*'s third step and California appellate courts were prohibited from conducting a comparative juror analysis for the first time on appeal. *See People v. Johnson*, 71 P.3d 270, 281-85 (Cal. 2003), *rev'd sub nom. Johnson v. California*, 545 U.S. 162 (2005); *see also Ali v. Hickman*, 584 F.3d 1174, 1179-80 (9th Cir. 2009) (discussing history of California's adoption of comparative juror analysis). In 2008, the California Supreme Court considered the effect of the *Miller-El* and *Snyder* decisions and determined that, <u>prospectively</u>, evidence of comparative juror analysis must be considered. *People v. Lenix*, 187 P.3d 946, 960-65 (Cal. 2008). The California Supreme Court did not find that all of the California cases back to at least 1992 that did not apply a comparative juror analysis had erred.

Similarly, our decisions in *Kesser* and *Green* permit, but do not require, the application of comparative juror analysis to prior state court determinations of *Batson* issues.  In *Kesser*, we found that the reviewing federal court could apply a comparative juror analysis to review a pre-*Miller-El* state court decision.  465 F.3d at 358-61.  Similarly, *Green* states that a trial court's *Batson* analysis "<u>may</u> include a comparative analysis of the jury . . . ."  532 F.3d at 1030 (emphasis added).  In neither case did the court find that pre-*Miller-El* state courts had erred if they failed to conduct a comparative juror analysis as part of their decision.

Any confusion on this matter, however has been resolved by the Supreme Court's decision in *Thaler v. Haynes*, 130 S.Ct. 1171 (2010) (per curiam) and our opinion in *Cook v. LaMarque*, 593 F.3d 810 (9th Cir. 2010).  In *Thaler*, the Supreme Court rejected an expansive view of retroactivity in the *Batson* context, holding that one of its rulings could not be applied retroactively as "clearly established Federal law."[4]  130 S.Ct. at 1174.  Similarly, in *Cook* we stated in

---

[4]    The Supreme Court held:

Even if *Snyder* did alter or add to *Batson*'s rule . . . *Snyder* could not have constituted 'clearly established Federal law as determined by' this Court for purposes of respondent's habeas petition because we decided *Snyder* nearly six years after his conviction became final and more than six years after the relevant state-court decision.  *See Williams v. Taylor*, 529 U. S. 362, 390, . . . (2000) (opinion for the Court by Stevens, J.); *id.*, at 412, . . . (opinion for the Court by

-6-

response to the dissent that:

> The dissent argues that "where a state court fails to apply comparative juror analysis in making its factual determination regarding pretext, no AEDPA deference is due . . . ." Dissent Op. at 831. Assuming for the sake of argument that this statement was correct prior to our opinion in [*Ali*, 584 F.3d 1174], it is no longer accurate. *See* 584 F.3d at 1181. Our decision in *Ali* clarified that even if the trial court and the California Court of Appeal "did not engage in comparative juror analysis," *id.* at 1179, where the "relevant evidence is found in answers to juror questionnaires and a transcript of voir dire, both of which were before the California Court of Appeal, ... [s]ection 2254(d)(2) ... applies," *id.* at 1181 n. 4.

Thus, the majority mistakes the Supreme Court's and the Ninth Circuit's holding that courts <u>could</u> use comparative analysis to retroactively review *Batson* cases, for a holding that a failure to do so, even before the Supreme Court's 2005 *Miller-El* opinion, constituted an application of the "wrong legal standard."

The critical distinction that appears to elude the majority is that where our review is based entirely on information that was contained in the state court record, our review is pursuant to § 2254(d)(2) and "we must defer to the California appellate court's conclusion that there was no discrimination unless that finding 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Ali*, 584 F.3d at 1180-81. *See also*

O'Connor, J.).

*Thaler*, 130 S.Ct. at 1174 n.2.

-7-

*Cook*, 593 F.3d at 816.

In sum, I cannot square the majority's view of the applicable law and facts with our binding holding in *Cook* concerning the scope of our review of an alleged state court *Batson* violation.

**B**

Finally, the majority's substitution of its evaluation of the cold record for the trial court's evaluation – which was based on its observation of counsel and the potential juror – is contrary to the Supreme Court's recent statement in *Snyder* that:

> On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. *See Hernandez v. New York*, 500 U.S. 352, 369, [] (1991)(plurality opinion); *id.*, at 372, (O'Connor, J., joined by Scalia, J., concurring in judgment). The trial court has a pivotal role in evaluating *Batson* claims. Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility, *see* 476 U.S. at 98, n.21, [] and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge," *Hernandez*, 500 U.S. at 365 [] (plurality opinion). In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's first-hand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "'peculiarly within a trial judge's province,'" *ibid*. (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, [] (1985)), and we have stated that "in the absence of exceptional circumstances, we would defer to [the trial court]." 500 U.S., at 366.

552 U.S. at 477 (parallel case citations omitted).

Although I agree with the majority's observation that Elizabeth G. was not the only potential juror with limited formal education, this does not support the conclusion, without more, that by excluding Elizabeth G. the prosecutor was engaging in purposeful discrimination. Although the majority treats each of the prosecutor's proffered reasons for excluding Elizabeth G. in isolation, the prosecutor's reasons were complimentary: he cited her education and her inattentiveness during the proceedings as reasons for excluding Elizabeth G.

The majority offers three reasons for substituting its view on whether Elizabeth G. was inattentive for that of the trial court: (1) "defense counsel disputed that there was anything about Elizabeth G.'s demeanor that indicated that she was not paying attention;" (2) Elizabeth G. responded to the court's questions; and (3) the prosecutor offered nothing to rebut defense counsel's contention that Elizabeth G. was attentive. *See* Maj. Op. 11.

None of these reasons are sufficient to overcome the deference accorded the trial judge and to justify substituting the majority's view for the first-hand observations of the trial judge. The first and third reasons do not withstand scrutiny. The trial judge is entitled to deference precisely because the judge has personally observed the jurors and the attorneys. *See Snyder*, 552 U.S. at 477.

-9-

Accordingly, the judge's determination of credibility and demeanor are not dependent on defense counsel's conclusory responding allegation or the prosecutor's failure to rebut that argument. Notably here, defense counsel did not explicitly address Elizabeth G.'s attentiveness, but rather made the more ambiguous and conclusory assertion that "[t]here was nothing in her responses or demeanor that would justify excusing her other than it being a race-based exclusion is our position." The majority's second reason also will not stand. The fact that a potential juror responds to direct questions says little about her attention to other aspects of the proceedings.

Furthermore, I disagree with the majority's conclusion that the trial court failed to make a determination regarding Elizabeth G.'s demeanor. Maj. Op. 11. The record reflects that after hearing both the prosecutor's education and demeanor-based reasons for excluding the witness (and having observed both Elizabeth G.'s and the prosecutor's demeanor), the trial judge stated: "I accept those reasons as being not based upon race or ethnicity." The majority claims this statement was insufficient, but in the context of the trial it is clear that the trial judge was (a) making a factual finding and (b) that he was best-situated to weigh the prosecution's proffered reasons and to conclude that together the two proffered reasons constituted sufficient race-neutral grounds for excluding Elizabeth G. *See*

-10-

*Hernandez v. New York*, 500 U.S. 352, 365 (1991) ("As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.") (quotation and citations omitted).

It would undoubtedly have been helpful if the trial court had developed the record further, but there was no law at the time that required a comparative juror analysis. Furthermore, even assuming that the prosecutor's education-based reason for excluding Elizabeth G. was insufficient in itself, when coupled with the prosecutor's report that Elizabeth G. was inattentive during the proceedings, there is sufficient evidence to support the trial court's conclusion under AEDPA's deferential standard of review that there was no *Batson*/*Wheeler* violation.[5]

---

[5] The fact that the prosecution passed on Elizabeth G. fourteen times before she was excused also undermines the inference of racial motivation on the prosecutor's part. As the California Supreme Court stated in its opinion:

> If the prosecutor's occupation-and-demeanor-based reasons for excluding Elizabeth G. were indeed pretextual, and he was in actuality bent on removing her from the jury because of her Hispanic ancestry, . . . his acceptance of the jury *14 times* with Elizabeth G. seated in the jury box, on four occasions with a second Hispanic prospective juror also seated on the jury, was hardly the most failsafe or effective way to effectuate unconstitutional or discriminatory intent.

*Reynoso*, 74 P.3d at 867-68. The majority rejects this explanation, however, instead adopting the Reynosos' argument that a prosecutor could theoretically pass over minority jurors several times as a pretext for later excluding them on the basis

The majority, however, takes a limited record – containing no demonstrable evidence of racial bias by the prosecutor – and draws negative inferences to conclude that the prosecutor's decision was racially motivated and that the California Supreme Court's contrary "decision was both an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence presented" under 28 U.S.C. § 2254(d). Maj. Op. 14. I disagree with the majority's approach and conclusion. I would hold that under the AEDPA standard, the totality of the circumstances supports the trial court's determination that the prosecutor's challenge was not based on race or ethnicity. *See Snyder*, 552 U.S. at 477. Accordingly, I would affirm.

---

of their race. There is, however, nothing in the record to support this speculation.