**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERIC WARREN GREEN,
    *Petitioner-Appellant,*

    v.

A.A. LAMARQUE, Warden,
    *Respondent-Appellee.*

No. 06-16254

D.C. No.
CV-02-00923-SBA

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
January 17, 2008—San Francisco, California

Filed July 17, 2008
Amended August 4, 2008

Before: William A. Fletcher and Carlos T. Bea,
Circuit Judges, and Jeffrey T. Miller* District Judge.

Opinion by Judge Bea

---

*The Honorable Jeffrey T. Miller, United States District Judge for the Southern District of California, sitting by designation.

9885

## COUNSEL

A. J. Kutchins, Berkeley, California, for the appellant.

Christopher W. Grove, Office of the California Attorney General (Oakland), Oakland, California, Ross C. Moody, Juliet B. Haley, Office of the California Attorney General, San Francisco, California, for the appellee.

## ORDER

The last sentence of the last page of the opinion, filed on July 17, 2008, is modified to read as follows:

Because "just one racial strike calls for a retrial," *Kesser*, 465 F.3d at 369, and because the evidence shows the prosecutor's stated reasons for striking Deborah P. were not genuine, we reverse and remand to the district court with instructions to grant the petition for writ of habeas corpus if the State of California does not grant Green a new trial within 180 days of the filing date of this order.

## OPINION

BEA, Circuit Judge:

While selecting a jury for a criminal trial in Alameda County, California, the prosecutor used peremptory chal-

lenges to exclude from the jury all six African-Americans on the jury panel. The African-American defendant claimed the prosecutor based such challenges on race. The prosecutor then offered race-neutral reasons which, we now conclude, also applied to unchallenged white jurors. This disparity in treatment convinces us the non-racial reasons claimed by the prosecutor were pretexts. Because the elimination of even a single juror due to race taints the trial, we reverse the district court's denial of the writ of habeas corpus.

Eric Warren Green, a California state prisoner, appeals the denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Green was on trial for assault of his mother, with a deadly weapon (a knife), causing great bodily harm, in violation of California Penal Code §§ 245(a)(1), 12022.7(a). During jury selection, Green made a motion to dismiss the empaneled jurors after the prosecutor used six of twelve peremptory challenges to strike all six African-American venire members who were called to the jury box. Green, an African-American, asserted the prosecutor had stricken these venire members based on race. The trial court denied Green's motion, and a majority of the California Court of Appeal affirmed Green's conviction.[1]

[1] When a defendant in a criminal trial challenges the State's use of peremptory strikes against racial minorities, trial courts must follow the analysis set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny. First, when a criminal defendant challenges the state's use of peremptory strikes, the defendant must make a *prima facie* showing the challenge was based on an impermissible basis, such as race. *Batson*, 476 U.S. at 96. This is a burden of production, not a burden of persuasion. *Johnson v. California*, 545 U.S. 162, 170-71 (2005).

---

[1] Presiding Justice Kline dissented on the *Batson* issue, writing that the trial court and the California Court of Appeal both erred in failing to conduct a comparative juror analysis.

**[2]** Second, if the trial court finds the defendant has made a prima facie case of discrimination, the burden then shifts to the prosecution to offer a race-neutral reason for the challenge that relates to the case. *Id.* at 168.

**[3]** Third, if the prosecutor offers a race-neutral explanation, the trial court must decide whether the defendant has proved the prosecutor's motive for the strike was purposeful racial discrimination. *Id.* at 767; *see also Batson*, 476 U.S. at 98.

**[4]** When conducting the analysis at the third step, the trial court must decide not only whether the reasons stated are race-neutral, but whether they are relevant to the case, and whether those stated reasons were the prosecutor's genuine reasons for exercising a peremptory strike, rather than pretexts invented to hide purposeful discrimination. *Batson*, 476 U.S. at 93, 95. "In deciding if the defendant has carried his burden of persuasion, a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 93 (internal quotation marks omitted).[2]

**[5]** The "circumstantial and direct evidence" needed for this inquiry may include a comparative analysis of the jury voir dire and the jury questionnaires of all venire members, not just those venire members stricken. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar[3] nonblack who is permitted to serve,

---

[2]The Court in *Batson* did not state that the trial judge must describe this analysis on the record, only that it must "undertake" such an analysis. Nevertheless, in *Miller-El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court *presumed* the trial court and state appellate court did not undertake this analysis because such analysis was not detailed in their opinions.

[3]Two jurors do not have to have all the same characteristics to be similarly situated. "A *per se* rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters." *Miller-El*, 545 U.S. at 247 n.6.

that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005).

**[6]** Further, the prosecutor is responsible for articulating his own reasons for the challenges exercised. The Supreme Court has stressed that courts must be careful not to substitute their own speculation as to reasons why a juror might have been struck for the prosecutor's stated reasons. *Id*. at 252.

**[7]** Here, the trial court failed to undertake " 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available,' " including a comparative analysis of similarly situated jurors, as required by clearly established Supreme Court law at the time of the trial.[4] *See Batson*, 476 U.S. at 93 (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)); *see also Miller-El*, 545 U.S. at 241).

**[8]** The California Court of Appeal's analysis did not remedy the trial court's error. The majority simply found the prosecutor had offered race-neutral reasons, cited and discussed several cases deferring to the trial court's evaluation of witnesses, and stopped there. It failed to reach step three in the *Batson* analysis. By merely reiterating the prosecutor's stated reasons, and then finding they were race-neutral, without analyzing the other evidence in the record to determine whether those reasons were in fact the prosecutor's genuine reasons, the California Court of Appeal made exactly the

---

[4]The record does not demonstrate the trial court conducted a comparative juror analysis—with one small exception. After the trial court had already denied Green's motion to dismiss the jury, Green pointed out that one of the reasons the prosecutor struck some of the African-American venire members—failure to answer all questions on the juror questionnaire—applied equally to other unchallenged white jurors. This was one of the three reasons the prosecutor gave for striking Deborah P. After looking through the questionnaires, the trial court agreed with Green but did not reconsider its denial of Green's motion to dismiss the jury.

same mistake for which the Supreme Court criticized the California courts in *Johnson v. California*, 545 U.S. at 172-73 (granting a petition for writ of habeas corpus filed under 28 U.S.C. § 2254), *rev'g People v. Johnson*, 71 P.3d 270 (Cal. 2003).

On appeal, the state essentially asks us to presume the trial court found the prosecutor's race-neutral reasons for striking Deborah P. to be genuine when it denied Green's motion. Yet we must not make such a presumption where "the court never fulfilled its affirmative duty to determine if the defendant had established purposeful discrimination." *Lewis v. Lewis*, 321 F.3d 824, 832 (9th Cir. 2003). We must conduct that analysis *de novo*, rather than remanding for the state courts to do so. *See Miller-El*, 545 U.S. at 241; *Kesser v. Cambra*, 465 F.3d 351, 356-58, 360 (9th Cir. 2006) (en banc).

[9] To be entitled to habeas relief, Green must prove the state court's adjudication of the merits of his claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a), and we reverse. We hold the California Court of Appeal's decision that the prosecutor's strike of Deborah P. was not racially motivated was based on an unreasonable determination of the facts in light of the evidence presented.[5]

---

[5]Because the state court record included the evidence relevant to our analysis, we apply § 2254(d)(2), rather than § 2254(e)(1). *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). Therefore, Green does not have to prove the state court's determination was unreasonable by clear and convincing evidence under § 2254(e)(1). *But see Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (leaving open the question whether § 2254(d)(2) or (e)(1) applies in such cases). This issue does not affect the outcome of this case because Green has met both standards.

In response to Green's motion to dismiss the empaneled jurors, the prosecutor said he struck Deborah P. because: (1) she had visited her stepfather in prison, and the prosecutor thought she would likely assume imprisonment would be the outcome of this case; (2) she failed to complete two questions on the juror questionnaire; and (3) she had held five jobs, suggesting she must have "problems getting along with others [and] responding to authority."

Comparing the prosecutor's stated reasons for striking Deborah P. to the voir dire of other venire members who were not struck, we hold that the prosecutor's three reasons for striking Deborah P. were pretexts.

[10] The prosecutor's first stated reason for striking Deborah P. was that she had visited her stepfather in prison twice. During voir dire, Deborah P. said she thought her stepfather was treated fairly by law enforcement. She said she was angry with her stepfather for committing the embezzlement which landed him in prison. His conviction was pursuant to a plea, not a trial. Thus, she could not have harbored any thought he was mistreated in the trial process. When asked: "Can you think of any reason why you would not be a fair and impartial juror in this case, ma'am?" she responded "no."

[11] The prosecutor did not strike any of six white prospective jurors whose relatives and friends had also been arrested, indicted or convicted of crimes.

Juror No. 6 said he had "relatives" who had been convicted of unspecified crimes and gone to prison, but he told the court that this would not affect his ability to be fair and impartial. If the prosecutor's first proffered reason for striking Deborah P. had been genuine, one would have expected him to question Juror No. 6 about this given that Juror No. 6 had multiple "relatives" who had been imprisoned, but the prosecutor did not. In *Miller-El*, where the prosecutor had questioned an African-American juror more closely than a white juror on a

subject equally applicable to both jurors, the Court found the reason to be a pretext and granted habeas relief. *Miller-El*, 545 U.S. at 255-63. Juror No. 6 did not volunteer, and the prosecution did not ask, whether he had visited his relatives in prison.

Juror No. 7 testified that when she was in her twenties, her father was indicted for fraud and possibly conspiracy. She did not believe the case ever went to trial. She did, however, testify that the proceeding went on for "several years" and it was "very emotional." The court then asked her whether she had any "particularly negative experiences against law enforcement or [the] criminal justice system as a result of that experience which would make it difficult for you to be fair and impartial?" She answered "no." Although the prosecutor asked Juror No. 7 how she felt about Green representing himself, he did not ask her anything about her father's indictment, whether he had been incarcerated while awaiting trial, whether she had visited him in prison, or whether she thought her father had been treated fairly by the judicial system. Indeed, the prosecutor did not ask her anything about her father's experience at all.

Juror No. 2's sister had been arrested or convicted of a crime. The court asked: "Do you feel that your sister has been treated fairly or unfairly by law enforcement over the year?" She answered: "I'm sure fairly. It was all in Southern California. I really wasn't a part of it." The court also asked whether the juror could think of any reason she could not be fair and impartial, to which she answered "no." Once again, the prosecutor did not ask any questions about whether the sister had been sent to prison, whether Juror No. 2 had visited the sister in prison, or any other related topic.

Juror No. 9, who asked that her voir dire be conducted in chambers, revealed that a former boyfriend with whom she was still friendly had been arrested and convicted of "something along the lines of receiving stolen property," and that

she had visited him in "jail" "four or five times." That same juror also knew people who used marijuana and cocaine, had a sister who had testified about the murder of the sister's neighbor and testified at the trial, and currently lived with someone who had been carjacked with a knife.

Juror No. 8 said that he had attended a court proceeding relating to a criminal charge "of buying stolen merchandise" against his brother, but that he assumed his brother had not been convicted "[b]ecause after that court, I didn't hear anything that my brother is free so—." The prosecutor did not ask Juror No. 8 any questions.

Alternate Juror No. 3's brother had been detained in Juvenile Hall, but he had never visited him there. Again, the prosecutor did not ask any follow-up questions.

Although the prosecutor did use a peremptory strike against one white male venire member whose son had been arrested and imprisoned multiple times, that venire member had multiple arrests and convictions himself. Because Deborah P. had never been arrested, that venire member was not similarly situated to Deborah P.

**[12]** The trial court did not inquire as to why the prosecutor feared Deborah P. might not be fair and impartial when the prosecutor obviously had no such worries regarding numerous white prospective jurors who had similar experiences. Indeed, some of those experiences were considerably more suggestive of possible anti-prosecution bias because they involved closer relationships. That the prosecutor did not question these similarly situated venire members about their incarcerated acquaintances and relatives undermines the prosecutor's first asserted rationale for striking Deborah P. "The State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for

discrimination." *Miller-El*, 545 U.S. at 246 (brackets omitted) (quoting *Ex parte Travis*, 776 So. 2d 874, 881 (Ala. 2000)).

The prosecutor's stated reason that Deborah P. failed to give complete answers to the juror questionnaire also applied equally to several white venire members, such as Juror Nos. 7 and 8, whom the prosecution accepted as jurors. Indeed, the trial court so found. The State does not dispute the trial court's finding.

**[13]** The prosecutor's stated reason that Deborah P.'s five jobs illustrated she could not get along well with others was undermined by the fact that he did not ask her a single question about why she changed jobs. Further, it is not uncommon for a person to hold five different jobs over a period of roughly twenty-eight years. The prosecutor also struck a white venire member who had held four jobs in the prior six years. The frequency with which that venire member changed jobs demonstrates that he was not similarly situated to Deborah P.

**[14]** Additional evidence of racial discrimination includes the fact that the prosecutor used peremptory challenges to eliminate all six African-Americans from the seated jury pool. Further, the prosecutor had noted the race of each venire member he struck from the jury pool; when the trial judge asked him who he struck and why, the prosecutor was able to read off a list, and he had noted the race of each venire member next to the member's name. *See Miller-El*, 545 U.S. at 249 n.7.

**[15]** We hold that, on balance, the direct and circumstantial evidence in the record demonstrates the prosecutor's strike of Deborah P. was racially motivated. We further hold the California Court of Appeal's contrary conclusion was based on an unreasonable determination of the facts in light of the evidence presented.

**[16]** Because "just one racial strike calls for a retrial," *Kesser*, 465 F.3d at 369, and because the evidence shows the prosecutor's stated reasons for striking Deborah P. were not genuine, we reverse and remand to the district court with instructions to grant the petition for writ of habeas corpus if the State of California does not grant Green a new trial within 180 days of the filing date of this order.

**REVERSED and REMANDED.**