CALLAHAN, CIRCUIT JUDGE,
dissenting:
I dissent from the majority’s decision to reverse the district court and remand for the purpose of granting the writs of habeas corpus to Julian and John Reynoso (“the Reynosos”) who were each convicted of first degree murder in the murder of Mario Martinez. I agree with the majority that this ease turns on the third step of the Batson[1] inquiry, but find that the majority’s analysis of the law and facts flawed. The majority misapprehends both the requirements of the Antiterrorism and Effective Death Penalty Act (“AEDPA”) and controlling Supreme Court opinions in concluding that the California Supreme Court’s opinion in this case was “was contrary to, or involved an unreasonable application of, clearly established federal law” and also “was based on an unreasonable determination of the facts in light of the evidence presented.” Maj. Op. 346 (quoting 28 U.S.C. § 2254(d)(l)-(2)).
I
First, the majority finds that the California Supreme Court’s decision was contrary to established federal law under 28 U.S.C. § 2254(d)(1) because the California Supreme Court failed to appreciate that purposeful discrimination in the exercise of a single peremptory challenge violates the Constitution. Maj. Op. 346-48. Although I agree that the majority’s abstract statement of the law is correct, it misreads the record and the court’s opinion.
As an initial matter, it should be noted that the trial court’s statement was in the conjunctive. After accepting the prosecutor’s reasons for excluding potential juror Elizabeth G. — that she didn’t have enough education and was inattentive — the trial court stated “[a]nd I don’t find that there has been a violation of Wheeler and that the — there was not systematic exclusion of a recognized ethnic group, i.e., Hispanics in this case” (emphasis added). The trial court made two separate findings connect *352 ed by “and.” The majority errs by suggesting that the trial court made a single limited finding — that there was no systematic exclusion of Hispanics — when the trial court in fact separately found no Wheeler violation based on the prosecution’s proffered reasons.
Further, contrary to the majority’s suggestion, the California Supreme Court did recognize that a single peremptory challenge could violate the Constitution. In response to the dissent, the California Supreme Court commented:
Justice Kennard also assails the trial court for using the term “systematic exclusion” in denying the Batson/Wheeler motion, suggesting the court thereby applied a wrong or outdated standard. (Dis. opn. of Kennard, J., post, 3 Cal.Rptr.3d at pp. 793-794, 74 P.3d at pp. 872-873.) Not so. Since the day the seminal decisions in Wheeler and Bat-son were each decided, it has been clearly understood that the unconstitutional exclusion of even a single juror on improper grounds of racial or group bias requires the commencement of jury selection anew, or reversal of the judgment where such error is established on appeal. (Batson, supra, 476 U.S. at p. 95, 106 S.Ct. 1712 [equal protection clause]; Wheeler, supra, 22 Cal.3d at p. 282, 148 Cal.Rptr. 890, 583 P.2d 748 [Cal. Const. right to trial by representative jury].) We long ago observed that although the well-worn phrase “systematic exclusion” is somewhat of a misnomer when used to describe a discriminatory use of peremptory challenges (since a single discriminatory and therefore unconstitutional exclusion will constitute Wheeler error), this and other courts have used and understood that term as an acceptable shorthand phrase for denoting Wheeler error. (People v. Fuentes, supra, 54 Cal.3d at p. 716, fn. 4, 286 Cal.Rptr. 792, 818 P.2d 75.) That observation having been made by this court nearly 13 years ago in Fuentes, it hardly seems fair or appropriate to fault this trial judge for using the term once in passing when denying the Bat-son/Wheeler motion, much less to conclude that a wrong standard was applied in ruling on the motion.
People v. Reynoso, 31 Cal.4th 903, 3 Cal. Rptr.3d 769, 74 P.3d 852, 868 n. 8 (2003).
Thus, the California Supreme Court recognized that a single peremptory challenge could violate the Constitution. The court’s holding was that in light of the use by California courts of “systematic exclusion” as a “shorthand phrase,” the trial court’s reference to “systematic exclusion,” coupled with its other finding that there had been no Wheeler violation, was not a failure to recognize that purposeful discrimination in the exercise of a single peremptory could violate the Constitution. Since the Supreme Court did not make the legal ruling suggested by the majority, the California Supreme Court’s opinion is not contrary to clearly established Supreme Court precedent.
II
The majority’s evaluation of the facts of this case is similarly problematic. It holds that the California Supreme Court’s decision violated AEDPA because it was “based on an unreasonable determination of the facts in light of the evidence presented.” 28 U.S.C. § 2254(d)(2).
A
The majority correctly recognizes that the prosecutor’s justifications for excusing a potential juror must be considered “within the context of the trial as a whole.” Maj. Op. 348, citing Kesser v. Cambra, 465 F.3d 351, 359 (9th Cir.2006) (en banc). However, the majority then asserts that *353 the state courts violated the Constitution by failing to undertake a comparative juror analysis.[2] I disagree with the majority’s reading of the relevant case law.
The Reynosos’ trial concluded in 1999 and the California Supreme Court’s decision affirming the Reynosos’ conviction was issued in 2003. The cases cited by the majority do not stand for the proposition that there was “clearly established Supreme Court law” in 1999 or in 2003 that retroactively require the trial court to have conducted a. comparative juror analysis. See Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), Miller-El v. Dretke, 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005); Green v. LaMarque, 532 F.3d 1028, 1030 (9th Cir.2008); Kesser, 465 F.3d at 358-61.
Although the Supreme Court utilized a comparative juror analysis to retroactively review state court decisions in both Miller-El and Snyder, in neither case did it hold that there was a retroactive Constitutional requirement to use a comparative juror analysis in Batson cases and that the failure to have done so was error on the part of the state courts. Rather, both of these decisions stand for the proposition that a comparative juror analysis is a tool that may be used by courts as a tool in reviewing Batson cases.[3]
Similarly, our decisions in Kesser and Green permit, but do not require, the application of comparative juror analysis to prior state court determinations of Batson issues. In Kesser, we found that the reviewing federal court could apply a comparative juror analysis to review a preMiller-El state court decision. 465 F.3d at 358-61. Similarly, Green states that a trial court’s Batson analysis “may include a comparative analysis of the jury....” 532 F.3d at 1030 (emphasis added). In neither case did the court find that pre-Miller-El state courts had erred if they failed to conduct a comparative juror analysis as part of their decision.
Any confusion on this matter, however has been resolved by the Supreme Court’s decision in Thaler v. Haynes, — U.S. -, 130 S.Ct. 1171, — L.Ed.2d - (2010) (per curiam) and our opinion in Cook v. LaMarque, 593 F.3d 810 (9th Cir.2010). In Thaler, the Supreme Court rejected an expansive view of retroactivity in the Batson context, holding that one of its rulings could not be applied retroactively as “clearly established Federal law.”[4] 130 *354 S.Ct. at 1174. Similarly, in Cook we stated in response to the dissent that:
The dissent argues that “where a state court fails to apply comparative juror analysis in making its factual determination regarding pretext, no AEDPA deference is due....” Dissent Op. at 831. Assuming for the sake of argument that this statement was correct prior to our opinion in [Ali, 584 F.3d 1174], it is no longer accurate. See 584 F.3d at 1181. Our decision in Ali clarified that even if the trial court and the California Court of Appeal “did not engage in comparative juror analysis,” id. at 1179, where the “relevant evidence is found in answers to juror questionnaires and a transcript of voir dire, both of which were before the California Court of Appeal, ... [sjection 2254(d)(2) ... applies,” id. at 1181 n. 4.
Thus, the majority mistakes the Supreme Court’s and the Ninth Circuit’s holding that courts could use comparative analysis to retroactively review Batson cases, for a holding that a failure to do so, even before the Supreme Court’s 2005 Miller-El opinion, constituted an application of the “wrong legal standard.”
The critical distinction that appears to elude the majority is that where our review is based entirely on information that was contained in the state court record, our review is pursuant to § 2254(d)(2) and “we must defer to the California appellate court’s conclusion that there was no discrimination unless that finding ‘was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.’ ” Ali, 584 F.3d at 1180-81. See also Cook, 593 F.3d at 816.
In sum, I cannot square the majority’s view of the applicable law and facts with our binding holding in Cook concerning the scope of our review of an alleged state court Batson violation.
B
Finally, the majority’s substitution of its evaluation of the cold record for the trial court’s evaluation — which was based on its observation of counsel and the potential juror — is contrary to the Supreme Court’s recent statement in Snyder that:
On appeal, a trial court’s ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. See Hernandez v. New York, 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395, [] (1991)(plurality opinion); id., at 372, 111 S.Ct. 1859, (O’Connor, J., joined by Scalia, J., concurring in judgment). The trial court has a pivotal role in evaluating Batson claims. Step three of the Batson inquiry involves an evaluation of the prosecutor’s credibility, see 476 U.S. at 98, n. 21 [ ], 106 S.Ct. 1712 and “the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge,” Hernandez, 500 U.S. at 365[ ], 111 S.Ct. 1859 (plurality opinion). In addition, race-neutral reasons for peremptory challenges often invoke a juror’s demeanor {e.g., nervousness, inattention), making the trial court’s firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether *355 the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie “ ‘peculiarly within a trial judge’s province,’ ” ibid, (quoting Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841, [] (1985)), and we have stated that “in the absence of exceptional circumstances, we would defer to [the trial court].” 500 U.S. at 366, 111 S.Ct. 1859.
552 U.S. at 477, 128 S.Ct. 1203 (parallel ease citations omitted).
Although I agree with the majority’s observation that Elizabeth G. was not the only potential juror with limited formal education, this does not support the conclusion, without more, that by excluding Elizabeth G. the prosecutor was engaging in purposeful discrimination. Although the majority treats each of the prosecutor’s proffered reasons for excluding Elizabeth G. in isolation, the prosecutor’s reasons were complimentary: he cited her education and her inattentiveness during the proceedings as reasons for excluding Elizabeth G.
The majority offers three reasons for substituting its view on whether Elizabeth G. was inattentive for that of the trial court: (1) “defense counsel disputed that there was anything about Elizabeth G.’s demeanor that indicated that she was not paying attention;” (2) Elizabeth G. responded to the court’s questions; and (3) the prosecutor offered nothing to rebut defense counsel’s contention that Elizabeth G. was attentive. See Maj. Op. 349-50.
None of these reasons are sufficient to overcome the deference accorded the trial judge and to justify substituting the majority’s view for the first-hand observations of the trial judge. The first and third reasons do not withstand scrutiny. The trial judge is entitled to deference precisely because the judge has personally observed the jurors and the attorneys. See Snyder, 552 U.S. at 477, 128 S.Ct. 1203. Accordingly, the judge’s determination of credibility and demeanor are not dependent on defense counsel’s conclusory responding allegation or the prosecutor’s failure to rebut that argument. Notably here, defense counsel did not explicitly address Elizabeth G.’s attentiveness, but rather made the more ambiguous and conclusory assertion that “[t]here was nothing in her responses or demeanor that would justify excusing her other than it being a race-based exclusion is our position.” The majority’s second reason also will not stand. The fact that a potential juror responds to direct questions says little about her attention to other aspects of the proceedings.
Furthermore, I disagree with the majority’s conclusion that the trial court failed to make a determination regarding Elizabeth G.’s demeanor. Maj. Op. 349-50. The record reflects that after hearing both the prosecutor’s education and demeanor-based reasons for excluding the witness (and having observed both Elizabeth G.’s and the prosecutor’s demeanor), the trial judge stated: “I accept those reasons as being not based upon race or ethnicity.” The majority claims this statement was insufficient, but in the context of the trial it is clear that the trial judge was (a) making a factual finding and (b) that he was best-situated to weigh the prosecution’s proffered reasons and to conclude that together the two proffered reasons constituted sufficient race-neutral grounds for excluding Elizabeth G. See Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (“As with the state of mind of a juror, evaluation of the *356 prosecutor’s state of mind based on demeanor and credibility lies peculiarly within a trial judge’s province.”) (quotation and citations omitted).
It would undoubtedly have been helpful if the trial court had developed the record further, but there was no law at the time that required a comparative juror analysis. Furthermore, even assuming that the prosecutor’s education-based reason for excluding Elizabeth G. was insufficient in itself, when coupled with the prosecutor’s report that Elizabeth G. was inattentive during the proceedings, there is sufficient evidence to support the trial court’s conclusion under AEDPA’s deferential standard of review that there was no Batson/Wheeler violation.[5]
The majority, however, takes a limited record — containing no demonstrable evidence of racial bias by the prosecutor— and draws negative inferences to conclude that the prosecutor’s decision was racially motivated and that the California Supreme Court’s contrary “decision was both an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence presented” under 28 U.S.C. § 2254(d). Maj. Op. 851. I disagree with the majority’s approach and conclusion. I would hold that under the AEDPA standard, the totality of the circumstances supports the trial court’s determination that the prosecutor’s challenge was not based on race or ethnicity. See Snyder, 552 U.S. at 477, 128 S.Ct. 1203. Accordingly, I would affirm.

. Batson v. Kentucky, 476 U.S. 79, 98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). People v. Wheeler, 148 Cal.Rptr. 890, 583 P.2d 748 (1978), is California’s analogue to Batson.

. Although the majority presents this issue under the "unreasonable determination” prong of AEDPA, 28 U.S.C. § 2254(d)(2), its comparative juror analysis argument more accurately fits under 28 U.S.C. § 2254(d)(1) as an argument that clearly established federal law mandated the use of a comparative juror analysis by the California Supreme Court.

. Notably, in 2003 when the California Supreme Court was considering the Reynosos’ case, California courts were not required to conduct a comparative juror analysis under Batson's third step and California appellate courts were prohibited from conducting a comparative juror analysis for the first time on appeal. See People v. Johnson, 30 Cal.4th 1302, 1 Cal.Rptr.3d 1, 71 P.3d 270, 281-85 (2003), rev'd sub nom. Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005); see also Ali v. Hickman, 584 F.3d 1174, 1179-80 (9th Cir.2009) (discussing history of California’s adoption of comparative juror analysis). In 2008, the California Supreme Court considered the effect of the Miller-El and Snyder decisions and determined that, prospectively, evidence of comparative juror analysis must be considered. People v. Lenix, 44 Cal.4th 602, 80 Cal.Rptr.3d 98, 187 P.3d 946, 960-65 (2008). The California Supreme Court did not find that all of the California cases back to at least 1992 that did not apply a comparative juror analysis had erred.

.The Supreme Court held:
Even if Snyder did alter or add to Batson’s rule ... Snyder could not have constituted 'clearly established Federal law as deter *354 mined by' this Court for purposes of respondent's habeas petition because we decided Snyder nearly six years after his conviction became final and more than six years after the relevant state-court decision. See Williams v. Taylor, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion for the Court by Stevens, J.); id., at 412, 120 S.Ct. 1495, ... (opinion for the Court by O'Connor, J.).
Thaler, 130 S.Ct. at 1174 n. 2.

. The fact that the prosecution passed on Elizabeth G. fourteen times before she was excused also undermines the inference of racial motivation on the prosecutor’s part. As the California Supreme Court stated in its opinion:
If the prosecutor's occupation-and demean- or-based reasons for excluding Elizabeth G. were indeed pretextual, and he was in actuality bent on removing her from the jury because of her Hispanic ancestry, ... his acceptance of the jury 14 times with Elizabeth G. seated in the jury box, on four occasions with a second Hispanic prospective juror also seated on the jury, was hardly the most failsafe or effective way to effectuate unconstitutional or discriminatory intent.
Reynoso, 3 Cal.Rptr.3d 769, 74 P.3d at 867-68. The majority rejects this explanation, however, instead adopting the Reynosos’ argument that a prosecutor could theoretically pass over minority jurors several times as a pretext for later excluding them on the basis of their race. There is, however, nothing in the record to support this speculation.