BERZON, Circuit Judge,
dissenting:
I respectfully dissent.
The California Court of Appeal accepted, -with little examination, the prosecutor’s proffered justifications for using peremptory challenges to strike three African-American panelists, resulting in a jury without any black jurors.[1] While it purported to undertake a comparative juror analysis, it did so backwards. Rather than examining each of the reasons proffered by the prosecutor for striking African-American jurors to determine whether any, many, or most were pretextual, the appellate court sifted through the prosecutor’s justifications, ignoring numerous pretextual rationales, in search of at least one reason that happened not to apply equally to a retained juror. Both Supreme Court precedent and our case law make clear that a court conducting comparative juror *1182 analysis must do the opposite — that is, it must examine each of the proffered justifications in turn. If any — or, worse, several — are equally applicable to seated jurors, an inference of pretext arises, rendering suspect the permissibility of the challenge. See, e.g., Miller-El v. Dretke, 545 U.S. 231, 246, 250-52, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005); Kesser v. Cambra, 465 F.3d 351, 369 (9th Cir.2006) (en banc).
Thus, while the California Court of Appeal “reviewed” the comparative juror analysis submitted by Briggs, its “review” was methodologically incorrect. It is no wonder that, according to the California Court of Appeal, its analysis was “largely beside the point.” Comparative juror analysis will often be “beside the point” if conducted, erroneously, by casting aside all of the obviously pretextual rationales while foraging for one that is unique to the stricken juror.
It is unclear under our caselaw whether this flawed comparative analysis itself indicates that the state court decision “involved an unreasonable application of[] clearly established Federal law,” 28 U.S.C. § 2254(d)(1), such that our review of Briggs’ Batson challenge ought to be de novo. Compare Cook v. LaMarque, 593 F.3d 810, 816 n. 2 (9th Cir.2010) (holding that AEDPA deference applies “even if the trial court and the California Court of Appeal did not engage in comparative juror analysis” (internal quotation marks omitted)) with Green v. LaMarque, 532 F.3d 1028, 1030 (9th Cir.2008) (holding that the trial court’s “fail[ure] to undertake a sensitive inquiry into such circumstances and direct evidence of intent as may be available, including a comparative analysis of similarly situated jurors ” contradicted “clearly established Supreme Court law” (internal quotation marks omitted) (emphasis added)). I shall therefore assume for purposes of this dissent that we must defer to the California Court of Appeal, despite its inaccurate legal analysis. Still, we must defer only to the extent that the California court’s decision rested on a “[ jreasonable determination of the facts in light of the evidence presented.” 28 U.S.C. § 2254(d)(2). It did not.
The prosecutor offered numerous justifications for striking each of the African-American jurors from the panel. Proper comparative analysis demonstrates, indisputably in my view, that the vast majority of these justifications with respect to the juror the majority calls Georgia M. were pretextual and thus indicative of a decision largely motivated by race. Absent a racial motivation, there would be no reason to make up a large number of pretextual reasons.
Under our caselaw, a peremptory challenge violates Batson if it is “ ‘motivated in substantial part by discriminatory intent,’ ” Cook, 593 F.3d at 815(quoting Snyder v. Louisiana, 552 U.S. 472, 484, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008)) (emphasis added). With regard to Georgia M., this standard is clearly met.
The prosecutor offered several pretextual reasons for striking Georgia M., raising the inference that the strike was because of race. In addition to six demonstrably pretextual rationales, the prosecutor offered only two weak justifications that were not obviously false. These two justifications — themselves dubious — are insufficient to combat the inference raised by the numerous demonstrably pretextual rationales that the peremptory strike was motivated, at least in substantial part, by race.[2] Cf. Kesser, 465 F.3d at 368 (“The *1183 stronger the objective evidence of discrimination, the more we will require by way of verifiable facts to sustain a trial court’s finding upholding the exercise of challenges.” (internal quotation marks omitted)). I would hold that the California Court of Appeals’ contrary conclusion is unreasonable.
I.
First, the California Court of Appeal relied — as does the majority — on Georgia M.’s statements ostensibly indicating that “she would require a higher burden of proof in a rape case” than in other kinds of cases. Not only is this characterization of Georgia M.’s statements on this point incomplete, as the majority acknowledges, but its credibility as a non-pretextual rationale is thoroughly undermined by comparative juror analysis.
As evidence that Georgia M. would not apply the correct standard of proof, the California Court of Appeal and the majority point to Georgia M.’s statements during voir dire explaining reasonable doubt as “a slight doubt in your mind,”[3] and stating that the prosecutor’s burden of proof ought to vary based on the severity of the crime at issue.
Georgia M.’s explanation of reasonable doubt as “slight doubt” occurred before the judge had explained the concept of reasonable doubt. The voir dire transcript demonstrates that Georgia M. was not stating that she would apply a different standard than “reasonable doubt,” but rather that she was having difficulty explaining — without the benefit of a judge’s instruction — the reasonable doubt standard.[4] This difficulty is not surprising, as the concept is notoriously elusive. “Although [the reasonable doubt] standard is an ancient and honored aspect of our criminal justice system, it defies easy explication.” Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); see also United States v. Nolasco, 926 F.2d 869, 871-72 (9th Cir.1991) (en banc) (highlighting “the difficulty of defining reasonable doubt”). The notion that the prosecutor would have stricken a juror because the juror had difficulty in defining, without any guidance, a legal concept widely re *1184 garded within the legal community as a difficult one is not plausible.
During a somewhat confusing exchange with the prosecutor, Georgia M. did state that the burden of proof should be greater in a rape case, assenting to the proposition that the prosecutor would have to offer “just ... a little bit more” evidence. However, the trial judge then interceded, informing Georgia M. that the standard of proof does not vary based on the crime. Georgia M. responded that she understood and could “follow that law.”
It is perhaps plausible that, as the majority suggests, despite Georgia M.’s ultimate assurances to the contrary, this exchange could leave the prosecutor concerned about whether Georgia M. would require the prosecution to satisfy a higher burden of proof because the .case involved rape. But comparative juror analysis reveals that even if the prosecutor harbored such a concern, it could not have been the rationale upon which she relied to strike Georgia M. Three seated jurors checked “yes” on their questionnaires in response to the question “Would you require more evidence in a sexual assault case as opposed to another type of crime such as auto theft?” One explained that such additional evidence would be required because sexual assault is “a more serious crime than auto theft.” Another stated that more evidence is required because “a sexual assault case is a little more complex than a[n] auto theft case.” Like Georgia M., upon being instructed that the amount of evidence required does not vary with the crime charged, these jurors retracted their statements.
The majority finds significant that it required more questioning to elicit a clear retraction from Georgia M. than from the seated jurors. But the record makes clear that such additional questioning occurred not because Georgia M. was intransigent, but rather because of the confused exchange between her and the prosecutor. Like the seated jurors, once the judge instructed Georgia M. as to the proper burden of proof and asked whether she could follow the law, she immediately and clearly affirmed that she could do so. There is thus no relevant difference between Georgia M.’s answers on this point and those of the seated jurors.
The majority contends that the dismissal of prospective Juror Hernandez supports the conclusion that the burden of proof justification for dismissing Georgia M. was not pretextual. I disagree. First, the prosecutor gave no reason at all for dismissing Juror Hernandez, nor did she make any other statement that might indicate that the reason for Hernandez’s dismissal was her statements regarding the burden of proof. In fact, it is exceedingly unlikely that such statements were the basis for the prosecutor’s decision. Juror Hernandez’s statements regarding the burden of proof were indistinguishable from those of the seated jurors cited by the majority. If anything, then, Juror Hernandez’s dismissal indicates that similar statements could not have been a bona fide justification for dismissing a prospective juror.
Furthermore, there is a significant difference between Hernandez and Georgia M. that makes it impossible to draw a meaningful conclusion from comparing the two prospective jurors. Unlike Georgia M., Hernandez expressly stated that she was sympathetic to the defendant because of her work with juveniles as a deputy probation officer. Although Hernandez clarified that such sympathy would not impact her decisionmaking, it is much more likely that the prosecutor challenged Hernandez because of her expressed sympathy for the defendant than because of her statements about the burden of proof.
*1185 The prosecutor’s other justifications fare no better. The prosecutor stated that the defense attorney “said to [Georgia M.], as well as [other prospective jurors] ... it sounded as though when you were talking to the prosecutor, that you were not going to follow the law at the end of the case.” This rationale is false. Defense counsel did indeed tell three prospective jurors that their voir dire testimony indicated that they would not follow the law. But Georgia M. was not one of these jurors. The prosecutor was simply wrong on this point, again raising an inference of pretext. See Miller-El, 545 U.S. at 244, 125 S.Ct. 2317; Ali v. Hickman, 584 F.3d 1174, 1190 (9th Cir.2009).
The majority cites, as a non-pretextual reason for striking her, Georgia M.’s statement on her juror questionnaire that she “would hesitate to convict on the word of one witness alone.” As a preliminary matter, the record is unclear on this point. Defense counsel’s comparative analysis before the state court indicates that Georgia M. actually wrote not that she would be hesitant to “convict a defendant if she believed a victim’s testimony beyond a reasonable doubt,” but that she did not know whether she would be hesitant to do so.
However, even if her questionnaire did state, as the prosecutor claimed, that she would hesitate to convict based on the testimony of a single witness, Georgia M. clarified this statement during voir dire. When asked by the prosecutor if she could convict the defendant “based on the testimony of one person alone if [she] believed that testimony beyond a reasonable doubt,” Georgia M. answered, “If I believed it, yes.” The prosecutor did not excuse two Caucasian jurors whose questionnaires stated that they would hesitate to convict based on the victim’s testimony alone, even if they believed such testimony beyond a reasonable doubt. Georgia M.’s written answer was thus, at worst, exactly the same as that of two seated jurors. Such a statement, followed by her affirmation during voir dire that she could, in fact, convict based on the victim’s testimony alone, could not have been the reason she was excused.
The prosecutor further stated that she was concerned by Georgia M.’s ambivalence as indicated by an answer on her questionnaire stating that she had no opinion about whether sexual assault victims were more or less believable than victims of other crimes. The majority suggests that no other juror expressed similar uncertainty, but nearly all — ten out of twelve — of the seated jurors gave substantially the same answer.[5] Therefore, this answer could not be a genuine reason for striking Georgia M.
The prosecutor also sought to justify her strike of Georgia M. by explaining that “when asked [in the juror questionnaire], do you think you’d require DNA, she said, depends how strong the other evidence is. So this is somebody who is clearly looking for, at least how I felt, stronger evidence than I would otherwise be required to present.” The majority acknowledges that this rationale is “weak.” I would hold that it is not just weak but clearly pretextual.
Three seated jurors gave substantially the same answer. Furthermore, two seated jurors gave answers that indicated far more strongly than Georgia M. did that *1186 they would be likely to require the presentation of DNA evidence. One answered “maybe not” to the question of whether she could convict without DNA evidence, explaining “I think it’s necessary in proving the case.” That juror noted that, particularly in rape or sexual assault cases, which this one was, she would require DNA evidence, going so far as to state that she would “maybe not” follow the law insofar as it does not require the presentation of DNA evidence. Another seated juror checked “no” when asked if he “could convict someone of rape or sexual assault without DNA evidence” and “yes” when asked if he “would require DNA evidence in a rape or sexual assault case.” Thus, nearly half of the jurors who were seated gave the same answer regarding the need for DNA evidence or one that was worse for the prosecution than Georgia M. Her answer on this point is not, therefore, a credible justification for the peremptory challenge against her.
Nor is the prosecutor’s statement that Georgia M. “said she was not a good judge of telling the truth.” Preliminarily, defense counsel contradicted this characterization of Georgia M.’s statement. He stated that, in answer to the question of whether she is “a good judge of whether or not someone is telling the truth,” Georgia M. wrote “no, not all the time.” Because the federal appellate record does not contain the questionnaires of excused jurors, we cannot verify this characterization.
Either way, a comparison with seated jurors indicates that, even on the prosecutor’s version, this statement is not a credible justification for striking Georgia M. One seated juror checked “No” and stated that she was “not really” a good judge of truth-telling. And several others who stated that they were generally good judges of truth-telling qualified their answers, adding that there were instances in which they had erred or that they were “not always” good at discerning whether someone was lying.
The majority, acknowledging that “[tjhese similar answers somewhat undermine the prosecutor’s reasoning,” states that nevertheless Georgia M.’s statement that she was not good at discerning whether someone was lying “could compound the prosecutor’s concern that [she] would not be a good juror because she could be unduly influenced by her fellow jurors.” I do not understand why this is so. There is, as far as I can tell, no relation between whether a juror is a good judge of truth-telling and the extent to which she is susceptible to the influence of her fellow jurors. To be sure, a prosecutor could permissibly decide to excuse jurors who'stated that they were not good at determining whether someone was telling the truth. However, comparative juror analysis reveals that the prosecutor in this case did not do that. Therefore, the prosecutor’s assertion to the contrary in Georgia M.’s case is demonstrably" pretextual.
The final justification cited by the majority is one upon which the California Court of Appeal explicitly declined to rely: the prosecutor’s poor rapport with Georgia M. Unlike the vast majority of the prosecutor’s proffered justifications for striking Georgia M., this rationale cannot be immediately discredited by comparative juror analysis — not because it is credible, but rather because it relies upon assertions that are impossible to evaluate from the record. The prosecutor stated that she “did not get a warm feeling from” Georgia M., that she “had no connection with her,” and that Georgia M. was giving her “a cold stare with little eye contact.”
Notably, this rationale is not equivalent to a justification based on a prospective juror’s demeanor. It is, instead, a report on the prosecutor’s own sense of her relationship with the juror. As such, this jus *1187 tifieation is essentially unfalsifiable. “Rapport” cannot be determined from a transcript. Indeed, with the exception, perhaps, of the extent and nature of Georgia M.’s eye contact, it would be difficult for even the trial judge to evaluate rapport, his presence during voir dire notwithstanding. In contrast to aspects of demeanor such as “nervousness” or “inattention” upon which prosecutors often rely, Snyder, 552 U.S. at 477, 128 S.Ct. 1203, no judge could discern whether a prospective juror was giving a prosecutor a “warm feeling.” See United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir.1989) (holding that a prosecutor’s “feeling” about a juror was insufficient to overcome a prima facie case of discrimination in violation of Batson). Unsurprisingly, the trial judge here made no finding about the prosecutor’s “rapport” with Georgia M.
Moreover, quite aside from its inherently opaque nature, I would view this justification with significant skepticism. Lack of “rapport” can be the manifestation of unconscious racial bias or cultural differences in communication. See Batson v. Kentucky, 476 U.S. 79, 106-107, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring.) (“A prosecutor’s own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is ‘sullen,’ or ‘distant,’ a characterization that would not have come to his mind if a white juror had acted identically.”). And because we cannot evaluate its credibility, an explanation based on lack of rapport can easily serve to conceal a racial motive for a peremptory challenge.
In short, despite the plethora of justifications offered by the prosecutor for striking Georgia M., only two quite weak rationales remain even possibly plausible after careful examination: (1) Georgia M.’s explanation of “reasonable doubt” as “slight doubt”; and (2) her rapport with the prosecutor. Even if these rationales could, in some circumstances, serve as credible reasons for striking a juror — which I doubt— they are much too weak to dispel the inference that arises from the numerous other pretextual justifications that the prosecutor acted, at least in substantial part, based on race.
On this point, the caselaw is crystal clear: If, in addition to many pretextual rationales, a prosecutor manages also to come up with two reasons that survive comparative juror analysis, that circumstance ordinarily does not undermine the inference that the peremptory challenge was, at least in substantial part, racially motivated. See, e.g., McClain v. Prunty, 217 F.3d 1209, 1221 (9th Cir.2000). If the prosecutor offers enough explanations, some of them are bound, simply by chance, not to apply to other jurors. As a result, the provision of multiple pretextual justifications suggests that the apparent validity of any facially plausible justification is illusory. Instead, where the other rationales are demonstrably pretextual, the inference arises that any other given justification “is also a make-weight.” Ali, 584 F.3d at 1192.
In United States v. Chinchilla, 874 F.2d 695, 699 (9th Cir.1989), for example, we held that “the fact that two of the four proffered reasons” for striking Latino jurors in that case did “not hold up under judicial scrutiny militates against [the] sufficiency” of the remaining two reasons, even if such reasons “would normally be adequately ‘neutral’ explanations.” Here, six of the prosecutor’s proffered reasons do not hold up. The other two are either exceedingly weak (Georgia M.’s explanation of reasonable doubt provided before the judge instructed jurors on its meaning) or unfalsifiable and inherently suspect (the “rapport” rationale). The only reasonable inference from this combination of explanations is that the prosecutor’s justifica *1188 tions were, at least in substantial part, pretexts for race. See Ali, 584 F.3d at 1192 (“ ‘[T]he prosecution’s proffer of [one] pretextual explanation naturally gives rise to an inference of discriminatory intent,’ even where other, potentially valid explanations are offered.” (quoting Snyder, 552 U.S. at 485, 128 S.Ct. 1203)). At best, the provision of numerous pretextual justifications and only two rationales that are even weakly plausible demonstrates a mixed motive — that is, it indicates the prosecutor was motivated at least in substantial part by race. I would therefore hold that the California Court of Appeal’s contrary conclusion was an unreasonable determination of the facts before it.
II.
Whether the Court of Appeal’s determination that the prosecutor’s challenge of Juror Sam Richardson (“Sam R.”) was not race-based is also unreasonable is a closer question. Because “[t]he Constitution forbids striking even a single prospective juror for a discriminatory purpose,” Snyder, 552 U.S. at 478, 128 S.Ct. 1203(internal quotation marks, alteration, and citation omitted), and, in my view, the challenge of Georgia M. violated Batson, I need not address Sam R. I note, nevertheless, that while the prosecutor’s contention that Sam R. was curt, flippant, and evasive does have some support in the record, other justifications offered by the prosecutor for striking him were either inaccurate, irrational, or belied by comparative juror analysis.
For example, the prosecutor stated that Richardson stated in his questionnaire that teenagers “are less believable because of age or personal background” when, in fact, he made no such statement.[6] Quite the opposite: Richardson stated that a “teenager can be more believable than an adult expectly [sic.] when a violent crime has be[en] committed against them.” (emphasis added).
The prosecutor also stated that Sam R. “suggested that the physical evidence would be different” in a sexual assault case than in other kinds of cases, a conclusion the prosecutor explained, supported her “concern that this is a man, he’s a physical evidence kind of guy, and that that’s someone who also looks that the system sometimes makes the victim seem at fault.” There are numerous problems with this justification. First, it is unsurprising that someone would comment that the physical evidence in a rape case would be different than that in, for example, an auto theft case — because, of course, it would be. It is difficult to understand why recognizing such a difference would make Sam R. a less fit juror.
Second, the prosecutor’s ostensible concern that Sam R. was a “physical evidence kind of guy” is belied by comparative juror analysis. The prosecutor apparently had no objection to seating a juror who stated in her questionnaire that she could “maybe” convict a defendant “of rape or sexual assault without any DNA evidence” because “other physical evidence is also acceptable to consider.”
Finally, there seems to be no logical connection between the prosecutor’s conclusion that Sam R. was a “physical evidence kind of guy” and the inference she claimed to draw from that characterization, that Sam R. “looks that the system sometimes makes the victim seem at fault.” It is difficult to discern what the prosecutor meant by this. To the extent that she meant that Sam R. viewed the system as sometimes unfairly blaming the *1189 victim, this would seem to bias him in the prosecution’s favor and therefore not be a credible reason to strike him. Cf. Ali, 584 F.3d at 1184-86 (indicating that bias on behalf of the prosecution was not a plausible reason for a prosecutor to challenge a prospective juror). If, instead, the prosecutor was contending that Sam R. himself was inclined to blame the victim, the record suggests that he, in fact, held the opposite view. In his questionnaire, Sam R. stated, “Sometimes justice is not serv[ed]; the victim is not regarded by the outcome of the trial, the criminal ... sometimes set free.” Neither the prosecution’s assertion that physical evidence was particularly important to Sam R. nor the inference she purported to draw from that fact are credible justifications for her peremptory challenge.
Regardless of whether the peremptory challenge of Sam R. violated Batson, the prosecutor’s provision of pretextual justifications for this strike bolsters the conclusion that her actual reasons for striking African-American jurors “differed from those that [she] asserted and that [her] ulterior motive was race-based.” Ali, 584 F.3d at 1196. “The prosecutor’s willingness to make up nonracial reasons for striking [Sam R.] makes it even harder to believe that [her] reasons for striking [Georgia M.] were race-neutral.” Kesser, 465 F.3d at 369.
III.
Discarding otherwise valid convictions because jurors were ousted for racial reason is tough medicine. It is nonetheless necessary if we are to maintain a judicial system that is free of the taint of racial discrimination. There is a very real temptation for prosecutors to exercise peremptory challenges on the basis of race — and not, or at least not necessarily, because they are themselves racist. Rather, prosecutors may believe — rightly or wrongly— that race is as good (or bad) a predictor of a juror’s likely vote as other demographic factors such as age or education or any of the other arbitrary bases upon which prosecutors decide whether to excuse a juror. Still, our law proscribes the use of race, but not the use of these other factors, as a basis for prosecutorial hunches.
Maintaining peremptory challenges while at the same time proscribing one basis for exercising them comes at a price. That price is that we must be scrupulous, rather than sloppy, in assuring that race was not a substantial motivating factor for striking a juror.
Here, the trial court failed to examine thoroughly the prosecutor’s proffered justifications for striking every single African-American prospective juror from the panel in a case in which an African-American defendant was charged with a cross-racial crime. Yet, despite this failure to conduct a proper inquiry, the California Court of Appeal deferred to the trial court’s conclusion. Although the appellate court purported also to review the comparative juror analysis provided by Briggs, it did so in a perfunctory manner that missed the point of such analysis. This flawed analysis resulted in a decision that unreasonably concluded that the prosecutor did not rely on race in exercising her peremptory challenges. If, instead, we conduct the careful analysis of the prosecutor’s proffered justifications that Batson and its progeny require, it becomes clear that, at least with respect to Juror Georgia M., the strike was motivated, at least in substantial part, by race. Our law simply does not permit prosecutors to exercise even discretionary challenges on this basis. I would therefore reverse.

. Out of a panel of sixty-five prospective jurors, there were four African-Americans. One was excused for cause. The prosecutor used peremptory challenges to strike the remaining three.

. In some instances, of course, a rationale not disproven through comparative analysis may have such inherent plausibility as to override any inference of pretext that arises from the failure of other proffered justifications to survive comparative analysis. For example, although many of the reasons the prosecutor gave for striking Juror Lawrence Lane ("Law *1183 rence L.”) were dubious, Lawrence L. did state that he "was in a sexual harassment case, and ... didn't like the way it came out,” and therefore it would be “difficult for” him not to hold the prosecutor to a higher standard than that required by law. This bald statement may have been a sufficiently strong basis for challenging Lawrence L. to dispel any inference of pretext derived from comparative juror analysis of the other justifications offered by the prosecutor for striking him. Still, that the prosecutor offered some dubious justifications for striking Lawrence L. provides further support for my conclusion that the challenge of Georgia M. was race-based. See Kesser, 465 F.3d at 369. Because this conclusion is sufficient to find a Batson violation, see Snyder, 552 U.S. at 478, 128 S.Ct. 1203, I assume here that the challenge of Lawrence L. was permissible and do not conduct a detailed analysis.

. The majority states that I characterize this rationale as “simply false.” Not so. What is simply false is that the defense attorney "said to Miss McCutchen,” as the prosecutor contended, that “it sounded as though ... you were not going to follow the law at the end of the case....” See infra at pages 1184 — 85. I do not think that the justification that Georgia M. equated reasonable doubt with "slight doubt” was false. Rather, as I explain, it is demonstrably pretextual.

. Georgia M.’s statement came in response to the defense attorney asking prospective jurors to explain reasonable doubt. Georgia M.'s full answer was:
I think I know what it means. It's when you — when a case or evidence or whatever, if there’s a slight doubt that in your mind-okay. I'm trying to find the words for this — then there's a chance of reasonable doubt.
I don’t know how to take it any further. I’m kind of tongue-tied right now.

. The majority’s confusion likely stems from the phrasing of the question, which asked "Do you have any opinions that victims of sexual assault are more or less believable than those who report being the victim of other crimes?” Answering this question "No,” as did the majority of seated jurors, meant that the juror was stating that he or she had no such opinion. This answer is precisely what the prosecutor asserted Georgia M. indicated on her questionnaire.

. Because the questionnaires for non-seated jurors are not part of the federal appellate record, I am relying on defense counsel’s representations in his memorandum before the trial court. These representations have not been contested by the state.