FILED

MAY 14 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>           Plaintiff-Appellee,<br><br>  v.<br><br>GERMAN RODARTE,<br><br>          Defendant-Appellant.</td><td>No.   16-10486<br><br>D.C. No.<br>4:15-cr-02139-RCC-BPV-1<br><br><br>MEMORANDUM[*]</td></tr>
</table>

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief Judge, Presiding

Submitted March 16, 2018[**]
San Francisco, California

Before:  McKEOWN, FUENTES,[***] and BEA, Circuit Judges.

German Rodarte appeals his jury conviction for conspiracy to transport

aliens and transporting illegal aliens, in violation of 8 U.S.C. § 1324.  During voir

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]       The Honorable Julio M. Fuentes, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

dire, the district court overruled defense counsel's objection to the government using two peremptory challenges on Jurors 1 and 3 on the basis that they were race/ethnic based. Rodarte argues that the district court erred by failing to conduct step three under *Batson v. Kentucky*, 476 U.S. 79 (1986). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

*Batson* created a three-step test to determine whether a peremptory strike was used in a racially discriminatory manner:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358-59 (1991) (citing *Batson*, 476 U.S. at 96-98).

The district court properly conducted steps one and two. However, the court disposed of the *Batson* challenges by determining that the government had asserted "sufficient race-neutral reasons." The court conducted no further analysis after determining that facially neutral grounds existed. The court erred in failing to reach step three. *See Green v. LaMarque*, 532 F.3d 1028, 1030 (9th Cir. 2008) ("When conducting the analysis at the third step, the trial court must decide not only

2

whether the reasons stated are race-neutral, but whether they are relevant to the case, and whether those stated reasons were the prosecutor's genuine reasons for exercising a peremptory strike, rather than pretexts invented to hide purposeful discrimination.").

"Faced with an improper application of the *Batson* framework, we may decide de novo whether the government's strikes were motivated by purposeful discrimination. Alternatively, we may remand to the district court, either for a factual hearing or for a new trial." *United States v. Alvarez-Ulloa*, 784 F.3d 558, 565-66 (9th Cir. 2015) (citations omitted).

Accordingly, we decide de novo whether the government's strikes were motivated by purposeful discrimination. "Comparative juror analysis is a useful tool at *Batson* step three, and failure to strike similarly situated venire members can ground a conclusion that purposeful discrimination occurred." *Id.* at 567 (citations omitted).

Rodarte failed to demonstrate purposeful discrimination due to a failure to strike similarly situated venire members. During voir dire, the jury panel was asked whether anyone including themselves, a relative, or close personal friend, had ever been arrested for something more serious than a traffic ticket. Thirteen people on the panel raised their hands. Of those thirteen people, six—Jurors 9, 34,

3

18, 22, 24, and 27—were selected to serve on the jury. These six jurors all stated the person arrested was treated fairly or they did not have sufficient connection to that person to know whether they were treated fairly, and they also affirmed that they could be fair and impartial in this case. The prosecution used a peremptory strike on Juror 1, who stated that her brother had been arrested for "home invasion" five years prior. In contrast to the six empaneled jurors, Juror 1 stated that her brother had not been treated fairly, and was "suing the State."

Moreover, one empaneled juror, Juror 9, had a history of possible substance abuse. Juror 9 was convicted for DUI approximately 16 years earlier. Juror 9 explained that at the time of the arrest, he/she[1] "was on medication and had some drinks." Accordingly, Juror 9's issue appeared to be limited in time and scope—it covered a short period of time when Juror 9 was on pre-surgery medication that mixed poorly with alcohol. Moreover, the arrest was removed in time—sixteen years prior. In addition, Juror 9 stated that he/she was treated fairly and the experience would not affect his/her ability to be fair and impartial. The prosecution used a peremptory strike on Juror 3, who stated that he had a treatment plan at CODAC, a facility that offers mental health and drug abuse treatment. Juror 3's court-ordered treatment is suggestive of a longer-term issue.

---

[1]It is unclear from the record whether Juror 9 is a man or woman.

Accordingly, Juror 3's potential mental health and/or substance abuse issues are distinguishable from Juror 9's DUI conviction.

**AFFIRMED**.